[Civ. No. 43005. First Dist.,Div. Four. Apr. 20, 1979.]

SIMAC DESIGN, INC., Plaintiff and Respondent, v.
AL ALCIATI, as Building Official, etc., et al.,
Defendants and Respondents;
CITIZENS FOR ORDERLY RESIDENTIAL DEVELOPMENT,
Real Party in Interest and Appellant.

[Civ. No. 43027. First Dist., Div. Four. Apr. 20, 1979.]

ARMAND TRUMPP et al., Plaintiffs and Respondents, v.
CITY COUNCIL OF MORGAN HILL et al.,
Defendants and Respondents;
CITIZENS FOR ORDERLY RESIDENTIAL DEVELOPMENT,
et al., Real Parties in Interest and Appellants.

COUNSEL

Tichinin & Mitchell, Bruce Tichinin and Robert B. Mitchell for Real Parties in Interest and Appellants.

Johnston, Miller & Giannini and Faber L. Johnston for Plaintiffs and Respondents.

No appearance for Defendants and Respondents.

OPINION

**CHRISTIAN, J.**—This opinion consolidates for decision the appeals in *Simac Design, Inc.* v. *Alciati,* 1 Civil 43005, and *Trumpp* v. *City Council of Morgan Hill,* 1 Civil 43027.

#### *Part One—Simac v. Alciati*

Citizens for Orderly Residential Development (CORD), real party in interest, appeals from a judgment granting a writ of mandate compelling the City of Morgan Hill to issue 11 building permits to Simac Design, Inc.

Respondent Simac filed a complaint for a writ of mandate (Code Civ. Proc., § 1085) on December 5, 1977. After a hearing that same day attended by attorneys for Simac and the defendant city, the court granted the writ of the basis of the verified petition. CORD did not appear at this hearing.

A few days later CORD moved to set aside the judgment. The trial court denied the motion. CORD appeals from the judgment and from the order denying the motion to set aside. The city has not appealed.

Respondent Simac owns 100 acres of land in Morgan Hill. On July 6, 1977, the city council approved a final subdivision map dividing the property into 32 residential lots. Respondent applied for two building permits on October 20 and for nine permits on October 26, 1977. The city building official refused to grant these 11 permits, first because of a temporary restraining order and then because of a newly enacted growth control initiative.

On October 14, 1977, this court in *Save El Toro Assn.* v. *Days* (1977) 74 Cal.App.3d 64 [141 Cal.Rptr. 282], held that the city had not adopted an open space plan as required by statute and therefore could not take any action to acquire, regulate or restrict open space land or to approve subdivision maps.

On October 21, a suit was commenced alleging that the city had not yet completed its general plan. (Save El Toro Assn. v. City of Morgan Hill, Santa Clara Co. Super. Ct., No. 386808.) The October 21 suit is not the action underlying the present appeal. The superior court in that suit issued a temporary restraining order on October 21 prohibiting the city from issuing any building permits until the court held a hearing on a preliminary injunction. On November 30, the court denied the preliminary injunction, and vacated the temporary restraining order as applied to respondent's subdivision.

In the meantime, on November 8, 1977, the voters of Morgan Hill voted on Measure E, a growth control initiative. On November 16, the city council found that Measure E had passed by a majority of the votes cast. Under Elections Code section 4013, Measure E went into effect 10 days later, on November 27.

The city building official refused to issue the 11 permits between October 21 and November 30 because of the temporary restraining order,

and between November 27 and December 5 because of Measure E. Respondent sought the writ of mandamus on December 5 to compel the city officials to issue the permits.

Respondent contends that CORD is not an aggrieved party that may appeal. That contention cannot be sustained. At the time pertinent to this appeal, Code of Civil Procedure section 387 provided in part: "At any time before trial, any person, who has an interest in the matter in litigation, or in the success of either of the parties, or an interest against both, may intervene in the action or proceeding." ■ "Before trial" means before the trial court renders judgment. (3 Witkin, Cal. Procedure (2d ed. 1971) p. 1875.) ■ However, a person not a party to the action as originally commenced or tried may intervene even after judgment, by moving to vacate the judgment under Code of Civil Procedure section 663.[1] ■ The person thereby gains the right to appeal an order denying the motion to vacate. (*County of Alameda* v. *Carleson* (1971) 5 Cal.3d 730, 736-737 [97 Cal.Rptr. 385, 488 P.2d 953]; 6 Witkin, Cal. Procedure (2d ed. 1971) p. 4115 (1979 supp.) p. 22.)

In the present case, the trial court on December 5, 1977, ordered issuance of a writ of mandate. This order was a final judgment. (5 Witkin, Cal. Procedure (2d ed. 1971) pp. 3938-3939.) CORD filed a notice of a "motion to set aside order" on December 15. This motion constituted a motion under section 663 to intervene and to vacate the judgment.

Respondent contends that section 663 does not apply to the present case. According to respondent, section 663 applies only to judgments "based upon findings of fact made by the court, or the special verdict of a jury" (Code Civ. Proc., § 663). The superior court in the present case rendered the December 5 order on the basis of the verified petition, and made no findings of fact.

Respondent's position that section 663 should not apply to the present case because the trial court did not make findings of fact must be

---

[1]Code of Civil Procedure section 663 provides:

"A judgment or decree, when based upon findings of fact made by the court, or the special verdict of a jury, may, upon motion of the party aggrieved, be set aside and vacated by the same court, and another and different judgment entered, for either of the following causes, materially affecting the substantial rights of such party and entitling him to a different judgment:

"1. Incorrect or erroneous conclusions of law not consistent with or not supported by the findings of fact; and in such case when the judgment is set aside, the conclusions of law shall be amended and corrected.

"2. A judgment or decree not consistent with or not supported by the special verdict."

rejected. ■ A motion to vacate under section 663 is a remedy to be used when a trial court draws incorrect conclusions of law or renders an erroneous judgment on the basis of uncontroverted evidence. The motion to vacate under section 663 is speedier and less expensive than an appeal, and is distinguished from a motion for a new trial, to be used when, e.g., the evidence is insufficient to support the findings or verdict. (See generally 5 Witkin, Cal. Procedure, *supra*, pp. 3699-3700.)

■ CORD has taken an appeal based on the clerk's transcript; this court therefore may not review the sufficiency of the evidence to support the judgment. Because CORD does not challenge the sufficiency of the evidence, the motion to vacate under section 663 was proper.

■ Respondent also argues that CORD is not an "aggrieved party" within the meaning of Code of Civil Procedure section 902: "Any party aggrieved may appeal. . . ." We reject this contention. One is considered "aggrieved" whose rights or interests are injuriously affected by the judgment. Appellant's interest must be immediate, pecuniary, and substantial and not nominal or a remote consequence of the judgment. (*County of Alameda* v. *Carleson, supra,* 5 Cal.3d 730, 737.) ■ The courts recognize the right of appeal wherever it is not precluded by statute, and it will not be denied on technical grounds if the appellant is acting in good faith. (*Redevelopment Agency* v. *City of Berkeley* (1978) 80 Cal.App.3d 158, 166 [143 Cal.Rptr. 633]; cf. *In re Veterans' Industries, Inc.* (1970) 8 Cal.App.3d 902, 920-927 [88 Cal.Rptr. 303][person without sufficient interest to intervene had standing to petition for writ of mandate].) ■ CORD is an unincorporated association of residents of and registered voters in Morgan Hill, whose purpose was to draft and organize voter support for initiative Measure E. CORD seeks to implement Measure E by conforming the city's issuance of building permits to the express terms of the measure. CORD therefore is an aggrieved party that may appeal the order denying the section 663 motion to vacate the judgment.

Respondent questions the effective date of Measure E. The voters of Morgan Hill voted on Measure E on November 8, 1977. On November 16, the city council found that a majority had voted in favor of Measure E. Under Elections Code section 4013, Measure E went into effect 10 days later, on November 27, 1977. However, on November 23, two city voters filed a statement of election contest (Elec. Code, §§ 20000-20053) on various grounds. The statement was subsequently withdrawn. According to respondents, the 10-day rule of section 4013 did not apply because the

election was contested, and the effective date of Measure E was postponed until a judicial determination of the validity of the election. The city therefore should have issued the 11 building permits to respondent upon the lifting of the temporary restraining order on November 30, 1977, without regard to the provisions of Measure E, according to respondent. This argument is without merit.

Elections Code sections 20000-20116 govern the contest of elections, generally including ballot measures (Elec. Code, § 20089). ■ Section 4013 provides that an initiative "shall go into effect 10 days after" the city council declares the results. There is no provision requiring an automatic stay of the effective date of an initiative merely because a statement of contest is filed.

Respondent argues that when a statement of contest is filed challenging the election of a person to public office, the candidate may not draw the salary for the office unless he or she holds the certificate of election or commission of office and discharges the duties of office. (See Gov. Code, §§ 1130-1132.) By analogy, respondent continues, Measure E was not effective until there was a certificate of election, or judicial determination of the validity of the election. The statement of the argument provides its own refutation. The Registrar of Voters of Santa Clara County did prepare a "Certificate of Election Results." ■ A certificate of election results is valid until its invalidity is established. (See *Benwell* v. *Lowery* (1946) 76 Cal.App.2d 614, 619 [173 P.2d 690].) Measure E went into effect on November 27, 1977.

Appellant contends that when the superior court ordered the city to issue the building permits it improperly directed a violation of Measure E. Measure E was designed to control the "rate, distribution, quality, and economic level of proposed development on a year-to-year basis" (Measure E, art. I). "[N]o building permit shall be issued . . . unless a development allotment had been obtained therefor in accordance with the provisions hereof" (*id.,* art. II). "Allotments for [fiscal year] 1977/1978 are limited to those developments with final map approval prior to June 30, 1977" (*id.,* art. VIII, § g). Respondent did not receive final map approval until July 6, 1977. Under Measure E, respondent was prohibited from obtaining a building permit. The writ of mandate therefore compelled the city building official to issue the 11 permits in violation of Measure E. ■ Mandamus does not lie to compel performance of an illegal act. (5 Witkin, Cal. Procedure, *supra,* p. 3844.)

Respondent for the first time on appeal challenges the constitutionality of Measure E. (See *Bayside Timber Co.* v. *Board of Supervisors* (1971) 20 Cal.App.3d 1, 4-6 [97 Cal.Rptr. 431].) ██ ██ A legislative act is presumed to be constitutional; the burden of establishing its unconstitutionality is on the challenging party. (5 Witkin, Summary of Cal. Law (8th ed. 1974) pp. 3281-3282.) ██ Respondent argues that Measure E is an invalid retrospective law that impairs the obligation of an existing contract. (See generally 5 Witkin, Summary of Cal. Law, *supra,* pp. 3571-3579.) There is no evidence in the record that respondent was a party to a contract that existed on November 27, 1977, when Measure E went into effect. The Morgan Hill City Council approved respondent's final subdivision map on July 6, 1977. Pursuant to the terms of the subdivision map approval, respondent had entered into a contract with a construction company to develop 10 acres of subdivision land to be used as city streets and had spent $250,000 on these improvements as of the time respondent filed a complaint for a writ of mandate on December 5, 1977. However, nothing in the record indicates that respondent had entered into this contract or made these expenditures as of November 27, when Measure E went into effect. Respondent has not established the unconstitutionality of Measure E on this ground. (See 5 Witkin, Summary of Cal. Law, *supra,* pp. 3918-3920, 3924-3927.)

██ Second, respondent argues that Measure E is an invalid retrospective law that deprives respondent of a vested right or substantially impairs such a right. Respondent has not demonstrated that it had a vested right on November 27, 1977, that was impaired by Measure E. Respondent applied for two building permits on October 20 and for nine permits on October 26. In an action commenced on October 21, the trial court issued a temporary restraining order preventing the city from issuing building permits. The city council notified respondent that "they could not issue the . . . eleven permits because they were prevented from doing so by virtue of said temporary restraining order." Measure E went into effect on November 27. The temporary restraining order was lifted as to respondent's property on November 30, 1977. Because of the temporary restraining order, the city did not issue any of the 11 permits to respondent between October 20, when respondent applied for the first permits, and November 27, when Measure E went into effect. Respondent therefore did not have a vested right on November 27 to building permits that had not yet been issued. Even if respondent had obtained the permits between October 20 and November 27, there is no evidence that respondent had incurred substantial expenses in connection with those permits as of November 27, 1977. Respondent has not sustained its

burden of establishing that Measure E is unconstitutional on this ground. (See 5 Witkin, Summary of Cal. Law, *supra,* pp. 3572-3574, 3772-3774.)

Because the writ of mandate compelled the city to issue the 11 permits in violation of Measure E, the judgment must be reversed.

### *Part Two—Trumpp v. City Council of Morgan Hill*

Appellants CORD and Save El Toro Association (SETA) appeal from an order granting a writ of mandate to compel the City of Morgan Hill to act upon the application of Armand Trumpp and others (hereafter respondents) for approval of their subdivision maps (see Subdivision Map Act, Gov. Code, §§ 66410-66499.58) "without consideration of any effect of Measure E."

Respondents filed a complaint for a writ of mandate (Code Civ. Proc., § 1085) on December 15, 1977. After a hearing held that same day attended by attorneys for Trumpp, the defendant city, and appellants, the trial court granted the writ on the basis of the verified petition. The city does not appeal.

Respondents own a residential subdivision located on El Toro peak in Morgan Hill. On December 24, 1976, the city planning commission approved respondent's tentative and final subdivision maps. The city council was to review the maps at its August 3, 1977, meeting.

In the meantime, an action was filed on July 5, 1977, alleging that the city had not yet completed its general plan as required by statute. (Save El Toro Assn. v. City of Morgan Hill, Santa Clara Co. Super. Ct., No. 378294.) That action is separate from the present appeal. The superior court in that action issued a temporary restraining order and then a preliminary injunction preventing the city from approving respondents' subdivision maps. The city council therefore did not review respondents' maps at the August 3 meeting. The court in that case vacated the injunction as to respondents' maps on November 30, 1977.

As we have seen, the voters of Morgan Hill passed Measure E on November 8. The measure went into effect on November 27, before the lifting of the preliminary injunction.

The city council refused to review respondents' maps, first because of the temporary restraining order and preliminary injunction between July

5 and November 30, and then because of Measure E between November 27 and December 15. On December 15, respondents obtained the writ of mandate to compel the city council to act on the maps without regard to Measure E.

■ Respondents argue that the trial court erred when it allowed appellant to intervene. Respondents filed a complaint for a writ of mandate on December 15. The trial court held a hearing on the complaint that same day. Attorneys for respondents and for the defendant city attended that hearing. In addition, Bruce Tichinin, an attorney for CORD and SETA, happened to be in court before the same judge in connection with the *Simac* case. When Tichinin realized that the trial court was about to hear respondents' complaint for a writ of mandate, he orally moved to intervene as a defendant and real party in interest. Tichinin informed the court, in the presence of the attorneys for respondents and the city, that he represented CORD, a group of voters who had campaigned for Measure E and who sought to implement the measure, and SETA, a group formed to preserve open space in Morgan Hill and El Toro peak. The trial court granted Tichinin's oral motion to intervene and then granted the writ.

Although CORD and SETA presented no documents to support their motion to intervene, Tichinin's oral presentation made in the presence of attorneys for respondents and the city adequately informed the trial court and the other parties of the basis for the motion. (See Code Civ. Proc., § 387.) The trial court did not err when it allowed intervention on the basis of the oral motion. (See *Traweek* v. *Draper* (1956) 143 Cal.App.2d 119, 120-123 [299 P.2d 391]; 3 Witkin, Cal. Procedure, *supra,* pp. 1865-1866, 1871-1873.)

Respondents also challenge the effective date of Measure E. For the reasons outlined above in the *Simac* appeal, we hold that Measure E became effective on November 27, 1977.

■ The final issue is whether Measure E affects the authority of the city council to act on respondents' subdivision maps. The Subdivision Map Act (Gov. Code, §§ 66410-66499) establishes general statewide criteria for land development planning, and delegates authority to cities and counties to regulate the details of proposed subdivisions. The act provides for regulation and control of the design and improvement of subdivisions, considering their relation to adjoining areas; requires the subdivider to install streets and drains; seeks to prevent fraud and

exploitation of purchasers and the public; and provides for preservation of open space for recreational use. Until a local authority approves a subdivision map, no parcels may be sold or developed. (See generally 3 Witkin, Summary of Cal. Law (8th ed. 1973) pp. 1788-1793.)

Measure E is designed to control the "rate, distribution, quality, and economic level of proposed development on a year-to-year basis." (Measure E, art. I.) In order to undertake a residential development (this term is not defined in the measure) or to obtain a building permit, a developer must apply for (*id.*, art. III) and obtain (*id.*, art. II) a "development allotment" (*id.*, arts. III-VIII). Development allotments generally are awarded under an elaborate point system (*id.*, arts. V-VIII). (See *Construction Ind. Ass'n, Sonoma Co.* v. *City of Petaluma* (9th Cir. 1975) 522 F.2d 897, 900-901 [similar residential development control system in Petaluma].)

Measure E applies to all residential development in Morgan Hill, including single and multiple family housing, except for subdivisions of four residential units or less and housing projects for elderly people. (Measure E, art. II.) Respondents concede that Measure E is applicable to their subdivision under this provision. "No residential development subject to the provisions hereof as herein provided shall be undertaken, and no building permit shall be issued, in the City of Morgan Hill unless a development allotment had been obtained therefor in accordance with the provisions hereof." (Measure E, art. II.) "[A]ll developments which have received final map approval on or before June 30, 1977 shall be granted allotments for [fiscal year] 1977/1978." (*Id.*, at art. VII.) "Allotments for [fiscal year] 1977/1978 are limited to those developments with final map approval prior to June 30, 1977." (*Id.*, at art. VIII, § g.) Respondents did not receive final subdivision map approval (see Gov. Code, §§ 66433-66443) on or before June 30, 1977. Respondents therefore are not entitled to an allotment for fiscal year 1977/1978. Measure E, article VII, provides that to obtain a development allotment, respondents must apply under the procedure set forth in Measure E, article III.

Article VII also provides that "In the event the number of requests for allotments for fiscal year 1978/1979 exceeds the number of allotments, priority shall be given in chronological order of final map approval." This provision implies that a developer will have obtained approval of its final subdivision map under the Subdivision Map Act before filing a development allotment application under Measure E. This inference is bolstered by the requirements of article III. Article III provides that the develop-

ment allotment application shall include a "site development plan" (art. III, § a, subd. 2). The "site development plan" requirements incorporate by reference the Subdivision Map Act standards for subdivision maps.

The city must act on respondents' application for approval of its subdivision maps under the Subdivision Map Act standards, and on the respondents' development allotment application under the Measure E standards. Respondents may convey or develop their subdivision *if and only if* the city approves their tentative and final subdivision maps under the Subdivision Map Act standards, and the city grants a development allotment for their residential development under Measure E. (See Gov. Code, § 66499.30; Measure E, art. II.)

Appellants argue that the procedures for tentative and final subdivision map approval outlined by the Subdivision Map Act are no longer to be used in Morgan Hill. According to appellants, those procedures have been merged into the "development allotment" procedures set out in Measure E. Appellants conclude that "[a] proposed project which meets the terms and conditions of Measure 'E', and receives development allotments, will end up with the equivalent of a final subdivision map approval for purposes of the Subdivision Map Act. . . ." There is no support for this interpretation in the language of Measure E. We therefore do not reach the issue of whether Measure E conforms or must conform to the requirements of the Subdivision Map Act. (See, e.g., Gov. Code, §§ 66411, 66425-66426, 66428, 66433, 66451, 66473.5, 66499.30.)

The judgment in *Simac* is reversed.

The judgment in *Trumpp* is modified to compel the city to act on respondents' application for approval of their subdivision maps in a manner consistent with this opinion.

Caldecott, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied May 14, 1979.