TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 94-604 |
| of | : | |
| | : | September 30, 1994 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| CLAYTON P. ROCHE | : | |
| Deputy Attorney General | : | |
| | : | |

_____


THE HONORABLE KATHLEEN L. BURGESS, COUNTY COUNSEL, DEL NORTE COUNTY, has requested an opinion on the following question:

If four adjoining subdivision lots are merged into two subdivision lots for the purpose of placing a mobilehome on each for rental, would the requirements of Mobilehome Parks Act apply to the placement and rental of the mobilehomes?

CONCLUSION

If four adjoining subdivision lots are merged into two subdivision lots for the purpose of placing a mobilehome on each for rental, the requirements of the Mobilehome Parks Act would apply to the placement and rental of the mobilehomes.

ANALYSIS

We are advised that four adjoining lots have been created under the provisions of the Subdivision Map Act (Gov. Code, §§ 66410-66499.37; "SMA"). The lots will be merged by the owner into two subdivision lots and one mobilehome will be placed on each for rental. The mobilehomes will not have permanent foundations. The question presented for resolution is whether

. 94-604

placement of the two mobilehomes on the subdivision lots will subject the owner to the requirements of the Mobilehome Parks Act (Health & Saf. Code, §§ 18200-18700; "MPA").[1]  We conclude that it will.

A.    The Subdivision Map Act

The SMA vests local governments with control over the design and improvement of land subdivisions in California.  (Gov. Code, § 66411; *Morehart* v. *County of Santa Barbara* (1994) 7 Cal.4th 725, 748; *City of West Hollywood* v. *Beverly Towers, Inc.* (1991) 52 Cal.3d 1184, 1189.)  A subdivider must obtain approval of and record a subdivision map with the governing local entity before resulting parcels may be sold, leased, or financed.  (*John Taft Corp.* v. *Advisory Agency* (1984) 161 Cal.App.3d 749, 755; *South Central Coast Regional Com.* v. *Charles A. Pratt Construction Co.* (1982) 128 Cal.App.3d 830, 845; *Simac Design, Inc.* v. *Alciati* (1989) 92 Cal.App.3d 146, 157-159.)

As conditions of approving a subdivision map, a city or county may require the subdivider to install or pay fees for the installation of such improvements as streets, sewers, parks, and school facilities made necessary by development of the subdivision.  (See, e.g., Gov. Code, §§ 66419-66421, 66462-66485; *South Central Coast Regional Com.* v. *Charles A. Pratt Construction Co., supra,* 128 Cal.App.3d at 845.)  The SMA contains various provisions concerning the merger of subdivided lots.  (See Gov. Code, §§ 66451.10-66451.21, 66499.20½, 66499.20¾.)

The main purposes of the SMA are to facilitate orderly community development and to protect the public from fraud and exploitation.  (*South Central Coast Regional Com.* v. *Charles A. Pratt Construction Co., supra,* 128 Cal.App.3d at 844-845; *Benny* v. *City of Alameda* (1980) 105 Cal.App.3d 1006, 1011; *Simac Design, Inc.* v. *Celciati, supra,* 92 Cal.App.3d at 157-158; *Pratt* v. *Adams* (1964) 229 Cal.App.2d 602, 605-606.)

B.    The Mobilehome Parks Act

The MPA regulates the construction and operation of mobilehome parks.  It requires each park owner to obtain a permit to operate the park on an annual basis (§§ 18500-18518) and prescribes in detail health and safety requirements with respect to maintenance, occupancy, and use (§§ 18550-18607).  It sets building construction, plumbing, and electrical standards.  (§§ 18620-18670.)

The MPA is administered by the State Department of Housing and Community Development (§ 18253; "Department"), although cities and counties may at their option assume responsibility for its enforcement.  (§ 18300, subd. (b).)  The Department has adopted extensive administrative regulations for mobilehomes (Cal. Code Regs., tit. 25, §§ 1000-2860), whether such homes are within or without a mobilehome park.

The purposes of the MPA are set forth in section 18254:

"(a)  It is the purpose of this part to accomplish both of the following:

---

[1]All references hereafter to the Health and Safety Code are by section number only.

"(1)   Assure protection of the health, safety, and general welfare of all park residents.

"(2)   Allow modifications in regulations adopted pursuant to this part in a manner consistent with the criteria established in this part.

"(b)   The regulations adopted by the department pursuant to the authority granted in this part shall provide equivalent or greater protection to residents of parks than the statutes and regulations in effect prior to January 1, 1978."

The Legislature has declared in section 18250:

"The Legislature finds and declares that increasing numbers of Californians live in manufactured homes and mobilehomes and that most of those living in such manufactured homes and mobilehomes reside in mobilehome parks.  Because of the high cost of moving manufactured homes and mobilehomes, most owners of manufactured homes and mobilehomes reside within mobilehome parks for substantial periods of time.  Because of the relatively permanent nature of residence in such parks and the substantial investment which a manufactured home or mobilehome represents, residents of mobilehome parks are entitled to live in conditions which assure their health, safety, general welfare, and a decent living environment, and which protect the investment of their manufactured homes and mobilehomes."

Section 18251 provides:

"The Legislature finds and declares that the standards and requirements established for construction, maintenance, occupancy, use, and design of parks should guarantee park residents maximum protection of their investment and a decent living environment.  At the same time, the standards and requirements should be flexible enough to accommodate new technologies and to allow designs that reduce costs and enhance the living environment of park residents."

Section 18253 states:

"The Legislature finds and declares that the specific requirements relating to construction, maintenance, occupancy, use, and design of parks are best developed by the department in accordance with the criteria established by this part.  Placing this responsibility with the department will allow for modifications of specific requirements in a rapid fashion and in a manner responsive to the needs of park residents and owners."

Proceeding to the key definitions in the MPA, we find that a "mobilehome park" is defined in subdivision (a) of section 18214 as follows:

"`Mobilehome park' is any area or tract of land where two or more mobilehome lots are rented or leased, held out for rent or lease, or were formerly held out for rent or lease and later converted to a subdivision, cooperative, condominium, or other form of resident ownership, to accommodate manufactured homes or mobilehomes used for human habitation. The rental paid for a manufactured home or mobilehome shall be deemed to include rental for the lot it occupies."

Section 18210 defines "lot" for purposes of the MPA as follows:

"`Lot' means any area or tract of land or portion of a mobilehome park or special occupancy park, designated or used for the occupancy of one manufactured home, mobilehome, recreational vehicle, tent, camp car, or camping party."

"Mobilehome" is defined as having "the same meaning as defined in Section 18008" (§ 18211), which in turn states that a mobilehome is:

"A structure transportable under permit in one or more sections, designed and equipped to contain not more than two dwelling units to be used with or without a foundation system." (§ 18008, subd. (a).)

Thus, a "mobilehome park" is any area where two or more mobilehome lots are rented, and any rental paid for a mobilehome is deemed to include the rental for the lot it occupies. A mobilehome lot includes any area for the occupancy of a mobilehome, and a mobilehome may be one with or without a foundation system.

We find it irrelevant that the two lots in question are "subdivision" lots. It may well be that many mobilehome parks are located on a single subdivision lot or parcel, with each mobilehome located in a separate space constituting a "mobilehome lot" for purposes of the MPA. Whether the separate space is also a unit of land for purposes of the SMA does not affect the requirements applicable to the operation of a mobilehome park. Both statutory schemes must be construed according to their own definitions and for their own purposes. "`The words of the statute must be construed in context, keeping in mind the statutory purpose, and statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible.'" (*Walnut Creek Manor* v. *Fair Employment & Housing Com.* (1991) 54 Cal.3d 245, 268.) "Where reasonably possible, we avoid statutory constructions that render particular provisions superfluous or unnecessary. [Citations.]" (*Dix* v. *Superior Court* (1991) 53 Cal.3d 442, 459.)

C.    The Planning and Zoning Law

It has been suggested that although the SMA itself may not preclude the application of the MPA requirements to the operation of a mobilehome park when the mobilehomes are located on separate subdivision lots, Government Code sections 65852.3 and 65852.4 may preclude such application. These statutes are not in the SMA but are part of the general provisions of the Planning and Zoning Law (Gov. Code, §§ 65000-66499.58) of which the SMA is a part. Government Code section 65852.3, subdivision (a) provides:

"A city, including a charter city, county, or city and county, shall allow the installation of manufactured homes certified under the National Manufactured Housing Construction and Safety Standards Act of 1974 (42 U.S.C. sec. 5401 et seq.) *on a foundation system*, pursuant to Section 18551 of the Health and Safety Code, on lots zoned for conventional single-family residential dwellings. *Except with respect to architectural requirements, a city, including a charter city, county, or city and county, shall only subject the manufactured home and the lot on which it is placed to the same development standards to which a conventional single-family residential dwelling on the same lot would be subject*, including, but not limited to, building setback standards, side and rear yard requirements, standards for enclosures, access, and vehicle parking, aesthetic requirements, and minimum square footage requirements. Any architectural requirements imposed on the manufactured home structure itself, exclusive of any requirement for any and all additional enclosures, shall be limited to its roof overhang, roofing material, and siding materials. . . . In no case may a city, including a charter city, county, or city and county, apply any development standards which will have the effect of precluding manufactured homes from being installed as permanent residences." (Emphasis added.)"[2/]

Government Code section 65852.4 provides:

"A city, including a charter city, a county, or a city and county, shall not subject an application to locate or install a manufactured home certified under the National Manufactured Housing Construction and Safety Standards Act of 1974 (42 U.S.C. Sec. 5401 et seq.) *on a foundation system*, pursuant to Section 18551 of the Health and Safety Code, on a lot zoned for a single-family residential dwellings, to any administrative permit, planning, or development process or requirement, which is not identical to the administrative permit, planning, or development process or requirement which would be imposed on a conventional single-family residential dwelling on the same lot. However, a city, including a charter city, county, or city and county, may require the application to comply with the city's, county's, or city and county's architectural requirements permitted by Section 65852.3 even if the architectural

---

2. "Manufactured home" is defined in section 18007 as follows:

"`Manufactured home,' for the purposes of this part, means a structure, transportable in one or more sections, which, in the traveling mode, is eight body feet or more in width, or 40 body feet or more in length, or, when erected on site, is 320 or more square feet, and which is built on a permanent chassis and designed to be used as a dwelling with or without a permanent foundation when connected to the required utilities, and includes the plumbing, heating, air conditioning, and electrical systems contained therein; except that such term shall include any structure which meets all the requirements of this paragraph except the size requirements and with respect to which the manufacturer voluntarily files a certification and complies with the standards established under this part. `Manufactured home' includes a mobilehome subject to the National Manufactured Housing Construction and Safety Act of 1974 (42 U.S.C., Sec. 5401, et seq.)."

requirements are not required of conventional single-family residential dwellings." (Emphasis added.)

Initially, we would note that these two statutes are inapplicable to our facts, since the mobilehomes at issue will not be installed on a foundation system.

Furthermore, the evident purposes of Government Code sections 65852.3 and 65852.4 are to preclude a local government from discriminating against the construction, placement, and occupancy of manufactured homes vis-a-vis conventionally built houses. The two statutes are not intended to undermine the requirements of the MPA imposed upon the owners of mobilehome parks, which requirements are administered by the Department.

As with the differing provisions and purposes of the SMA and MPA, we are to harmonize the various requirements of Government Code sections 65852.3 and 65852.4 and of the MPA, giving effect to each to the extent possible. (See *Walnut Creek Manor* v. *Fair Employment & Housing Com., supra,* 54 Cal.3d at 268; *Dix* v. *Superior Court, supra,* 53 Cal.3d at 459.)

We are advised that the Department, with enforcement responsibility over the MPA's requirements, has uniformly administered the MPA with respect to mobilehomes placed on separate subdivision lots. It has concluded that Government Code sections 65852.3 and 65852.4 do not purport to grant an exemption for mobilehome park owners from the plain wording and purposes of the MPA. "Unless unreasonable or clearly contrary to the statutory language or purpose, the consistent construction of a statute by an agency charged with responsibility for its implementation is entitled to great deference. [Citation.]" (*Dix* v. *Superior Court, supra,* 53 Cal.3d at 460.) We find the Department's interpretation of the MPA to be reasonable and in keeping with the Legislature's declared purposes.

Finally, we note that section 18214 itself presupposes that a mobilehome park may consist of mobilehomes placed upon separate subdivision lots. It states that a mobilehome park consists of any area "formerly held out for rent or lease and later converted to a subdivision . . . to accommodate manufactured homes or mobilehomes for human habitation."

Accordingly, we conclude that if four adjoining subdivision lots are merged into two subdivision lots for the purpose of placing a mobilehome on each for rental, the requirements of the MPA would apply to the placement and rental of the mobilehomes.

\* \* \* \* \*