TO BE PUBLISHED IN THE OFFICIAL REPORTS

OFFICE OF THE ATTORNEY GENERAL
State of California

DANIEL E. LUNGREN
Attorney General

_____

| | | |
|---|---|---|
| OPINION | : | |
| | : | No. 97-1202 |
| of | : | |
| | : | April 3, 1998 |
| DANIEL E. LUNGREN | : | |
| Attorney General | : | |
| | : | |
| GREGORY L. GONOT | : | |
| Deputy Attorney General | : | |
| | : | |

_____

THE HONORABLE MARSHALL S. RUDOLPH, COUNTY COUNSEL, COUNTY OF MONO, has requested an opinion on the following question:

If a federal patent conveying government property into private ownership describes the property being conveyed in terms of multiple, contiguous "lots" depicted on an official United States Government Survey Map, does each lot constitute a distinct legal parcel that a county must recognize for purposes of the California Subdivision Map Act?

CONCLUSION

If a federal patent conveying government property into private ownership describes the property being conveyed in terms of multiple, contiguous "lots" depicted on an official United States Government Survey Map, each lot does not constitute a distinct legal parcel that a county must recognize for purposes of the California Subdivision Map Act.

ANALYSIS

The California Subdivision Map Act (Gov. Code, §§ 66410-66499.37; "Act") **Footnote No. 1** vests local governments with control over the design and improvement of land subdivisions in California. (§ 66411; *Morehart* v. *County of Santa Barbara* (1994) 7 Cal.4th 725, 748; *City of West Hollywood* v. *Beverly Towers, Inc.* (1991) 52 Cal.3d 1184, 1189.) "'Subdivision' means the division by any subdivider of any unit or units of improved or unimproved land, or any portion thereof, shown on the latest equalized county assessment roll as a unit or as contiguous units, for the purpose of sale, lease or financing . . . ." (§ 66424.) A subdivider must obtain approval of and

record a subdivision map with the governing local entity before resulting parcels may be sold, leased, or financed. (*John Taft Corp.* v. *Advisory Agency* (1984) 161 Cal.App.3d 749, 755; *South Central Coast Regional Com.* v. *Charles A. Pratt Construction Co.* (1982) 128 Cal.App.3d 830, 845; *Simac Design, Inc.* v. *Alciati* (1989) 92 Cal.App.3d 146, 157-159.) The main purposes of the Act are to facilitate orderly community development and to protect the public from fraud and exploitation. (*South Central Coast Regional Com.* v. *Charles A. Pratt Construction Co.*, *supra*, 128 Cal.App.3d at 844-845; *Benny* v. *City of Alameda* (1980) 105 Cal.App.3d 1006, 1011; *Pratt* v. *Adams* (1964) 229 Cal.App.2d 602, 605-606.)

We are asked to determine whether a United States Government Survey Map ("Survey Map") depicting contiguous "lots" effects a subdivision of land for purposes of the Act such that when a federal patent conveys the lots into private ownership, each of the lots must be recognized by the county for purposes of the Act. Virtually the same issue was addressed in *John Taft Corp.* v. *Advisory Agency*, *supra*, 161 Cal.App.3d 749. In *Taft* the court considered the status of a Survey Map that had been filed in 1878 and had outlined and identified three contiguous lots that were later included in a patent conveying approximately 140 acres of property into private ownership. **Footnote No. 2** Subsequent conveyances were accomplished by a single instrument that separately identified, but did not divide, ownership of the lots. In 1980 the current owner of the property conveyed two of the lots by separate grant deeds and retained the balance of the land. Because the county had never approved any map under the provisions of the Act and had never granted approval of any subdivision of the property, the issue presented was whether the separate sale of the two lots constituted an illegal subdivision under the requirements of the Act.

The *Taft* court held that the Survey Map did not establish a subdivision of land within the meaning of the Act. If it had established a subdivision, the Act itself would have exempted the owner from having to obtain county approval of a map in order to sell the two lots. As the court explained: "We . . . focus on the question whether the U.S. Survey Map 'established' a 'subdivision' which 'created' lots 1, 2 and 3 as 'lawful parcels' which were exempt within the meaning of sections 66424.2 and 66499.30, subdivision (d) of the Map Act." (*Id.*, at p. 756.) The court pointed out that the Survey Map did not provide constructive notice to prospective transferees, was not recorded in the local office of the county recorder, and did not serve the same purposes of a map filed under the Act. (*Id.*, at pp. 754, 756.) While federal survey law may use the term "legal subdivision," such term "refers neither to a physical division of land nor to the allocation of a parcel to more than one owner." (*Id.*, at p. 753.) Accordingly, the court concluded that "the 'legal subdivisions' referred to by the federal survey laws have not been 'established' within the meaning of the Map Act." (*Id.*, at p. 756.) The court found support for its conclusion in cases holding that a Survey Map "does not 'subdivide' the property for purposes of the [California] Subdivided Lands Act. [Citations.]" (*Id.*, p. 757.)

Similarly, here, the multiple contiguous lots depicted on a Survey Map may not be separately conveyed without compliance with the requirements of the Act. The lots described in the present situation collectively constitute one parcel for purposes of the Act, not multiple legal parcels. **Footnote No. 3** In reaching this conclusion, we are cognizant of dictum in *Morehart* v. *County of Santa Barbara* (1994) 7 Cal.4th 725, concerning the possibility that subdivisions may have been created prior to the inception of the Act and its predecessors. In *Morehart*, in

analyzing the effect of the Act's merger provisions on an "antiquated subdivision," the court stated that it "need not consider any of the prerequisites to creation of a parcel that preceded California's first subdivision map statute in 1893." (*Id.*, at p. 761.) Although this dictum suggests that lots may have been created prior to 1893 outside the framework of any subdivision statutes or ordinances (see *id.,* at p. 766 (conc. opn. of Mosk, J.)), the fact remains that the *Taft* decision clearly holds that a Survey Map does not establish a subdivision for purposes of the Act. **Footnote No. 4**

* * * * *

---

**Footnote No. 1**
All section references hereafter are to the Government Code.
**Footnote No. 2**
Federal patents may convey real property into private ownership under various federal statutes dealing with such matters as school allotments, military allotments, public land allotments, homestead allotments, and railroad grants.
**Footnote No. 3**
In *Lakeview Meadows Ranch* v. *County of Santa Clara* (1994) 27 Cal.App.4th 593, 594-598, and *Gomes* v. *County of Mendocino* (1995) 37 Cal.App.4th 977, 982-983, each parcel within a group of contiguous parcels under common ownership was conveyed by a different patent. In those circumstances, each such individually patented parcel was considered to be a legal parcel under the Act. Here, as in *Taft*, there is but one patent that encompasses several contiguous parcels.
**Footnote No. 4**
Although not required to issue a certificate of compliance for lots of the type discussed herein, the county may be required to issue a conditional certificate of compliance pursuant to section 66499.35, subdivision (b). That provision does not appear to leave the county with the option of denying the certificate of compliance without more. (See *Stell* v. *Jay Hales Development Co.* (1992) 11 Cal.App.4th 1214, 1227; *Hunt* v. *County of Shasta* (1990) 225 Cal.App.3d 432, 442; *Kirk* v. *County of San Luis Obispo* (1984) 156 Cal.App.3d 453, 458-459; 74 Ops.Cal.Atty.Gen. 149, 153-154 (1991).) However, depending upon the circumstances, the conditions imposed may be simply that the subdivider must file a map that would meet the current requirements of the Act.