Filed 8/16/21  San Jose Unified School Dist. v. Rocketship Education CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| SAN JOSE UNIFIED SCHOOL DISTRICT,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ROCKETSHIP EDUCATION et al.,<br><br>    Real Parties in Interest and Appellants. | H045884<br>(Santa Clara County<br>Super. Ct. No. 1-13-CV-241695) |

In 2013, the Santa Clara County Board of Education (County Board) issued a zoning exemption pursuant to Government Code section 53094, subdivision (b) to allow a charter school to be located on property owned by the City of San Jose.  San Jose Unified School District (the District) successfully sought a writ of mandate to set aside the resolution issuing the zoning exemption.  In 2017, this court affirmed, holding that Government Code section 53094, subdivision (b) does not authorize county boards of education to issue zoning exemptions for charter school facilities.  (*San Jose Unified School Dist. v. Santa Clara County Office of Education* (2017) 7 Cal.App.5th 967, 986 (*San Jose Unified*).)

Subsequently, the District moved for attorney fees under the private attorney general statute (Code Civ. Proc., § 1021.5).[1]  The trial court granted the motion and

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

awarded the District more than $115,000 in attorney fees. Rocketship filed a section 663 motion to vacate the order awarding the District attorney fees, which the trial court denied. Rocketship appeals. We shall affirm.

I.    BACKGROUND[2]

### A.    Factual Summary

The Santa Clara County Office of Education (County Office) provides support services to Santa Clara County's numerous school districts. The County Office also operates preschool and child development programs, provides environmental education to fifth and sixth graders, partners with districts in running their own special education programs, provides regional occupational program services, coordinates services for foster and homeless youth, monitors County-approved charter schools, and provides educational programs for children of migrant families. The County Board is the elected governing body of the County Office.

Rocketship Education (Rocketship) is a network of elementary charter schools targeting low-income students and those who are below basic proficiency on state exams. The County Board has granted Rocketship a countywide charter to operate up to 25 charter schools. Rocketship proposed to locate one of its charter schools on property owned by the City of San Jose and located both in the District and in the County Office's jurisdiction. Both the City's General Plan and its zoning ordinance precluded the property from being used for a school. Rocketship requested that the County Board and the County Office exempt the property from the City's General Plan and zoning ordinance. In 2013, the County Board approved a resolution doing so pursuant to Government Code section 53094, subdivision (b).

---

[2] We take the facts and portions of the procedural history from our prior opinion in *San Jose Unified*, *supra*, 7 Cal.App.5th 967.

### B.    *Procedural History*

The District filed a petition for a traditional writ of mandate seeking rescission of the resolution.  In 2014, the trial court ruled that the County Board lacked the authority to invoke Government Code section 53094, subdivision (b).  The court entered judgment and issued a peremptory writ of mandate directing the County Board to rescind the resolution or take official action denying Rocketship's request for an exemption from local zoning requirements.  The County Office, the County Board, and Rocketship appealed.

In a prior published opinion, this court affirmed, concluding that Government Code section 53094, subdivision (b) does not authorize a county board of education to issue zoning exemptions for use of property by a charter school.  We held that, rather, the statute grants the power to issue zoning exemptions for charter schools to the governing board of a school district.  (*San Jose Unified*, *supra*, 7 Cal.App.5th at p. 980.)

In May 2017, the District filed a motion in the trial court seeking attorney fees pursuant to section 1021.5.  The trial court granted that motion and awarded the District $115,224.77 in attorney's fees and $1,092.76 in costs.

Rocketship filed a motion to vacate and modify the order awarding the District attorney fees pursuant to section 663, subdivision (1) on the ground that there was an " '[i]ncorrect or erroneous legal basis for the decision, not consistent with or not supported by the facts . . . .' "[3]  The trial court denied that motion.

Rocketship timely appealed.

---

[3] Rocketship's request for judicial notice filed on June 24, 2020 is granted. Pursuant to Evidence Code sections 452, subdivision (d) and 459, we take judicial notice of the parties' proposed settled statements of the hearing on Rocketship's motion to vacate.

**II.     DISCUSSION**

###### A.     *Legal Principles*

####### 1.     *Section 1021.5*

Section 1021.5 "provide[s] courts with the statutory authority to award attorney fees under a private attorney general theory." (*Bui v. Nguyen* (2014) 230 Cal.App.4th 1357, 1364 (*Bui*).) "The doctrine's purpose 'is to encourage suits enforcing important public policies by providing substantial attorney fees to successful litigants in such cases.' " (*Children & Families Com. of Fresno County v. Brown* (2014) 228 Cal.App.4th 45, 55.) A plaintiff is eligible for attorney fees under section 1021.5 when three criteria are met: (1) the action has resulted in the enforcement of an important right affecting the public interest; (2) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons; and (3) the necessity and financial burden of private enforcement are such as to make the award appropriate.[4] (*Bui*, *supra*, at p. 1365.) "The moving party bears '[t]he burden [of] establish[ing] each prerequisite to an award of attorney fees under section 1021.5.' " (*Ibid.*) "Section 1021.5 codifies the courts' 'traditional equitable discretion' concerning attorney fees [citation], and within the statutory parameters courts retain considerable discretion." (*Vasquez v. State of California* (2008) 45 Cal.4th 243, 251 (*Vasquez*).)

####### 2.     *Section 663*

Section 663 provides, in relevant part: "[a] judgment or decree, when based upon a decision by the court, . . . may, upon motion of the party aggrieved, be set aside and

---

[4] Section 1021.5 states, in relevant part: "Upon motion, a court may award attorneys' fees to a successful party against one or more opposing parties in any action which has resulted in the enforcement of an important right affecting the public interest if: (a) a significant benefit, whether pecuniary or nonpecuniary, has been conferred on the general public or a large class of persons, (b) the necessity and financial burden of private enforcement, or of enforcement by one public entity against another public entity, are such as to make the award appropriate, and (c) such fees should not in the interest of justice be paid out of the recovery, if any."

vacated by the same court, and another and different judgment entered" in the event of an "[i]ncorrect or erroneous legal basis for the decision, not consistent with or not supported by the facts . . . ." (§ 663, subd. (1).) A motion to vacate under section 663 is the proper remedy to be used when "the trial judge draws an incorrect legal conclusion or renders an erroneous judgment upon the facts found by it to exist." (*County of Alameda v. Carleson* (1971) 5 Cal.3d 730, 738.) "A motion to vacate in the trial court provides a means by which such a nonparty may become a party to the litigation with a right of appeal without the need to formally intervene in the action." (*Henry M. Lee Law Corp. v. Superior Court* (2012) 204 Cal.App.4th 1375, 1382.) "The motion to vacate under section 663 [also] is speedier and less expensive than an appeal, and is distinguished from a motion for a new trial, to be used when, e.g., the evidence is insufficient to support the findings or verdict." (*Simac Design, Inc. v. Alciati* (1979) 92 Cal.App.3d 146, 153 (*Simac Design*).) The trial court may not change its findings of fact in ruling on a section 663 motion. (*Glen Hill Farm, LLC v. California Horse Racing Bd.* (2010) 189 Cal.App.4th 1296, 1302.)

3.      *Standard of Review*

Rocketship appeals from the denial of its section 663 motion to vacate the trial court's order awarding attorney fees pursuant to section 1021.5. Accordingly, our standard of review is informed by both of those statutes.

Because section 663 is not the proper vehicle for attacking factual findings, any challenges to the trial court's findings of fact are not properly before us on appeal. (*Simac Design*, *supra*, 92 Cal.App.3d at p. 153.) We review questions of law, including whether the trial court applied the correct legal rule, de novo. (*Crocker National Bank v. City and County of San Francisco* (1989) 49 Cal.3d 881, 888.)

As noted, "[s]ection 1021.5 codifies the courts' 'traditional equitable discretion' concerning attorney fees" and requires courts to " 'realistically assess the litigation and determine, from a practical perspective, whether or not the action served to vindicate an

5

important right so as to justify an attorney fee award under a private attorney general theory.' [Citation.]" (*Vasquez*, *supra*, 45 Cal.4th at p. 251.) Accordingly, we review a court's determinations as to whether the statutory requirements have been satisfied for abuse of discretion, unless the question turns on statutory construction, in which case our review is de novo. (*Bui*, *supra*, 230 Cal.App.4th at p. 1367; *Boatworks, LLC v. City of Alameda* (2019) 35 Cal.App.5th 290, 307.) The abuse of discretion standard of review applies even where "the underlying facts are undisputed, [as] it remains the trial court's duty to consider those facts and the circumstances of the case and exercise its discretion in determining whether the requirements were satisfied for an award of attorney fees under section 1021.5 . . . ." (*Carian v. Department of Fish & Wildlife* (2015) 235 Cal.App.4th 806, 816.) " ' "An abuse of discretion occurs if, in light of the applicable law and considering all of the relevant circumstances, the court's decision exceeds the bounds of reason and results in a miscarriage of justice. [Citations.] This standard of review affords considerable deference to the trial court provided that the court acted in accordance with the governing rules of law. We presume that the court properly applied the law and acted within its discretion unless the appellant affirmatively shows otherwise." ' [Citation.]" (*Espejo v. The Copley Press, Inc.* (2017) 13 Cal.App.5th 329, 378.)

"We review the trial court's order, not its reasoning, and may affirm the order if it is correct on any theory apparent from the record." (*Save Our Heritage Organisation v. City of San Diego* (2017) 11 Cal.App.5th 154, 162, fn. 4.)

### B. Analysis

#### 1. Enforcement of an Important Right Affecting the Public Interest

Rocketship argues that the trial court committed reversible legal error by awarding fees without considering the first statutory requirement for a section 1021.5 fee award—

that the action resulted in the enforcement of an important right affecting the public interest.

"The most fundamental rule of appellate review is that a judgment is presumed correct, all intendments and presumptions are indulged in its favor, and ambiguities are resolved in favor of affirmance." (*City of Santa Maria v. Adam* (2012) 211 Cal.App.4th 266, 286.) "We presume the trial court knew and properly applied the law absent evidence to the contrary." (*McDermott Will & Emery LLP v. Superior Court* (2017) 10 Cal.App.5th 1083, 1103.) Nothing in the trial court's order awarding attorney fees indicates that the court failed to understand and consider the "important right" requirement. To the contrary, the order identifies the issue before it as was whether the District is entitled to "attorney's fees because it has advanced an important right affecting the public interest pursuant to Code of Civil Procedure [section] 1021.5." The order goes on to define the right at issue in the litigation as "the sovereign right of school districts to build schools within their jurisdiction and appropriately exercise exemptions from local zoning ordinances to charter schools."

Rocketship challenges the trial court's characterization of that right as a "sovereign" one. We agree that it is properly characterized as a statutory right. As our prior opinion explained, the location of public schools is a sovereign activity of the state of California. (*San Jose Unified*, *supra*, 7 Cal.App.5th at p. 979.) The state has empowered its agencies—the school districts—to carry out that activity. And, in Government Code section 53094, subdivision (b), the state legislature has authorized "the governing board of a school district . . . [to] render a city or county zoning ordinance inapplicable to a proposed use of property by the school district." Thus, the right of school districts to issue zoning exemptions for charter schools is a statutory one. Of course, section 1021.5 applies "to the vindication of . . . statutory rights." (*Woodland Hills Residents Assn., Inc. v. City Council* (1979) 23 Cal.3d 917, 935 (*Woodland Hills*), fns. omitted.)

7

Rocketship contends the trial court erred by failing to *explicitly* state that the right at issue was an important one affecting the public interest. This court rejected a similar argument in *Bui*. There, the appellant argued that, "to the extent the [lower] court failed to make express findings concerning any of the requisite elements for an attorney fee claim under section 1021.5, the trial court's order must be reversed." (*Bui*, *supra*, 230 Cal.App.4th at p. 1372.) Noting that "[c]ase authority does not support [appellant's] position," this court rejected that argument and proceeded to consider "whether the [trial] court properly made an *implied* finding that [the respondent] established the" disputed statutory element. (*Ibid*.; see *County of San Luis Obispo v. Abalone Alliance* (1986) 178 Cal.App.3d 848, 867 [rejecting argument that "the trial court should have made a specific finding that a large class of people was benefited" where "[n]o finding on this matter was requested"]; *Heron Bay Homeowners Assn. v. City of San Leandro* (2018) 19 Cal.App.5th 376, 389 [implying findings on the financial burden element of section 1021.5].) We shall follow suit and consider whether the record supports an implied finding that the statutory right of school districts to issue zoning exemptions for charter schools is an important one affecting the public interest.

As noted, section 1021.5 applies "to the vindication of . . . statutory rights." (*Woodland Hills*, *supra*, 23 Cal.3d at p. 935.) "[I]n determining the 'importance' of the particular 'vindicated' right, courts should generally realistically assess the significance of that right in terms of its relationship to the achievement of fundamental legislative goals." (*Id.* at p. 936.) As our prior opinion explained, Government Code section 53094 was enacted in conjunction with a number of other provisions with the goals of subjecting most state agencies to local regulation (i.e., zoning ordinances) while preventing local interference with the state's sovereign activities of school construction and location. (*San Jose Unified*, *supra*, 7 Cal.App.5th at p. 980.) The exclusive right of school districts to

8

issue zoning exemptions for charter schools advances those legislative goals.[5]  Namely, it ensures state agency compliance with local zoning regulations with a narrow exception for the agencies tasked with school location—school districts.  For the foregoing reasons, we cannot say the trial court abused its discretion in concluding that the District's action enforced an important right affecting the public interest.

### 2.    *Significant Benefit*

Section 1021.5 also requires a plaintiff to establish that the litigation conferred a "significant benefit, whether pecuniary or nonpecuniary . . . on the general public or a large class of persons."  "[T]he 'significant benefit' that will justify an attorney fee award need not represent a 'tangible' asset or a 'concrete' gain but, in some cases, may be recognized simply from the effectuation of a fundamental constitutional or statutory policy." (*Woodland Hills*, *supra*, 23 Cal.3d at p. 939.)  But "[b]oth the statutory language ('Significant benefit') and prior case law . . . indicate that the Legislature did not intend to authorize an award of attorney fees in every case involving a statutory violation." (*Ibid.*)  Rather, the trial court must "determine the significance of the benefit, as well as the size of the class receiving benefit, from a realistic assessment, in light of all the pertinent circumstances, of the gains which have resulted in a particular case." (*Id.* at pp. 939-940.)  "Where . . . the nonpecuniary benefit to the public is the proper enforcement of the law, . . . the significant benefit and important right requirements of section 1021.5 to some extent dovetail." (*La Mirada Avenue Neighborhood Assn. of Hollywood v. City of Los Angeles* (2018) 22 Cal.App.5th 1149, 1158 (*La Mirada*).)

Here, the trial court found that enforcing the exclusive right of school districts to issue zoning exemptions for charter schools has two benefits:  (1) facilitating city

---

[5] Rocketship's contention that the litigation effectuated *no* statutory policy is untenable.  "[G]enerally speaking the enactment of a statute entails in a sense the declaration of a public policy." (*Serrano v. Priest* (1977) 20 Cal.3d 25, 46.)  Plainly, enforcement of Government Code section 53094, subdivision (b) effectuates that statute's underlying public policy.

9

planning and development by limiting the number of entities with authority to override a local zoning ordinance and (2) enabling school districts " 'to plan their educational communities in an orderly manner' " and "make [related] land use decisions."[6] Rocketship takes issue with the second of those two findings on appeal. But that finding is a factual one, based on declarations submitted by the District and credited by the trial court. On appeal from the denial of a section 663 motion, challenges to factual findings are not properly before us; "we are confined in our review to a determination of whether the conclusions of law and judgment are consistent with and supported by the findings of fact." (*Newbury v. Civil Service Commission of City of Los Angeles* (1940) 42 Cal.App.2d 258, 259.) We cannot say that the trial court abused its discretion in concluding that the facilitation of city planning and school location by school districts are significant benefits. Noting that our prior opinion impacted "every school district in California," the trial court concluded that the significant benefits it had identified would accrue to the general public or a large class of individuals. Again, we perceive no abuse of discretion.

Rocketship contends that this litigation cannot be said to have conferred a significant benefit on the general public because this court's construction of Government

---

[6] These benefits—the facilitation of city planning and school location by school districts—derive from the enforcement of Government Code section 53094, subdivision (b) and the achievement of its underlying legislative goals of subjecting most state agencies to local zoning ordinances while preventing local interference with the state's sovereign activities of school construction and location. That does not mean the analysis conflates the first two statutory requirements, as Rocketship contends. As Rocketship correctly notes, "[t]he 'significant benefit' and 'important right' requirements of section 1021.5 are separate elements." (*California Common Cause v. Duffy* (1987) 200 Cal.App.3d 730, 749 (*Duffy*).) But "[w]here . . . the nonpecuniary benefit to the public is the proper enforcement of the law, . . . the significant benefit and important right requirements of section 1021.5 to some extent dovetail. [Citations.]." (*La Mirada*, *supra*, 22 Cal.App.5th at p. 1158.) Thus, in *Duffy*, the court affirmed an award of attorney fees under section 1021.5 where the litigation vindicated the important right to not have the government take sides in elections and "[a]ll the public benefitted from not having the government . . . take sides in the election." (*Duffy*, *supra*, at pp. 746-749.)

Code section 53094, subdivision (b) undermines the statutory policies of the Charter Schools Act. Rocketship essentially reiterates a critique of the current legislative scheme articulated by amicus curiae California Charter Schools Association in the prior appeal. That is, that charter schools cannot effectively compete with district schools—as the Charter Schools Act intends—when charter schools are forced to rely on school districts for facilities. (*San Jose Unified*, *supra*, 7 Cal.App.5th at p. 982, fn. 8.) The current legislative scheme addresses this concern by requiring school districts to "make available, to each charter school operating in the school district, facilities sufficient for the charter school to accommodate all of the charter school's in-district students in conditions reasonably equivalent to those in which the students would be accommodated if they were attending other public schools of the district." (Ed. Code, § 47614, subd. (b).) The facilities must "be contiguous, furnished, and equipped" and the school district must "make reasonable efforts to provide the charter school with facilities near to where the charter school wishes to locate, and shall not move the charter school unnecessarily." (*Ibid*.) As we explained in our prior opinion, concerns regarding the efficacy of that solution are best addressed to the legislature. But the mere fact that a different legislative scheme arguably would produce more or different benefits than the current one does not compel the conclusion that the trial court abused its discretion in determining that the enforcement of the current legislative scheme conferred a significant benefit upon the public.

### 3. *Necessity and Financial Burden of Private Enforcement*

The necessity and financial burden requirement " ' "examines two issues: whether private enforcement was necessary and whether the financial burden of private enforcement warrants subsidizing the successful party's attorneys." ' " (*Conservatorship of Whitley* (2010) 50 Cal.4th 1206, 1214.) It is the financial burden issue that is disputed on appeal. "In determining the financial burden on litigants, courts have quite logically focused not only on the costs of the litigation but also any offsetting financial benefits

11

that the litigation yields or reasonably could have been expected to yield. ' "An award on the 'private attorney general' theory is appropriate when the cost of the claimant's legal victory transcends his personal interest, that is, when the necessity for pursuing the lawsuit placed a burden on the plaintiff 'out of proportion to his individual stake in the matter.' [Citation.]" ' [Citation.] 'This requirement focuses on the financial burdens and incentives involved in bringing the lawsuit.' [Citation.]" (*Id.* at p. 1215.) The court is to estimate the value of the case " 'at the time the vital litigation decisions were being made' " and then " 'place the estimated value of the case beside the actual cost and make the value judgment whether it is desirable to offer the bounty of a court-awarded fee in order to encourage litigation of the sort involved in this case . . . . [A] bounty will be appropriate except where the expected value of the litigant's own monetary award exceeds by a substantial margin the actual litigation costs.' [Citation.]" (*Id.* at pp. 1215-1216.)

Here, the District did not seek, and was not awarded, monetary relief. Below, the County Board argued that the District nevertheless had a strong financial incentive to litigate the case because it stood to lose $7,149 in annual finding for each student that enrolled in the proposed Rocketship charter school as opposed to a District-run school. With the proposed school projected to enroll 555 students by fall 2016, millions of dollars in annual funding were at stake, the County Board argued. The trial court rejected that argument, noting that a different Rocketship charter school was allowed to open and operate in the District's boundaries with the District's authorization and blessing.

Implicit in the trial court's order is the conclusion that the litigation did not entirely prevent the proposed charter school from opening in the District (and from thereby diverting funds from the District); rather, it merely prevented the school from operating in one particular location. The record supports that conclusion. The County Board has granted Rocketship a countywide charter to operate up to 25 charter schools. Thus, authorization for the proposed charter school exists. And the District will be

12

required to make facilities available to the proposed charter school if it ultimately operates in the District and requests such facilities. (Ed. Code, § 47614.) Therefore, any potential financial incentive for the District was " 'largely speculative,' [such that] the trial court did not abuse its discretion in concluding the financial burden criterion was satisfied." (*Keep Our Mountains Quiet v. County of Santa Clara* (2015) 236 Cal.App.4th 714, 740.)

## III.    DISPOSITION

The order is affirmed. The District shall recover its costs on appeal.

                                                  _____

                                                  ELIA, J.

WE CONCUR:

_____

GREENWOOD, P.J.

_____

GROVER, J.

*San Jose Unified School District v. Rocketship Education et al.*
H045884