Filed 1/24/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| SAN JOSE UNIFIED SCHOOL DISTRICT et al., | H041088 |
| Plaintiffs and Respondents, | (Santa Clara County Super. Ct. No.1-13-CV-241695) |
| v. | |
| SANTA CLARA COUNTY OFFICE OF EDUCATION et al., | |
| Defendants and Appellants; | |
| ROCKETSHIP EDUCATION et al., | |
| Real Parties in Interest and Appellants. | |

Government Code section 53094, subdivision (b) authorizes "the governing board of a school district" to "render a city or county zoning ordinance inapplicable to a proposed use of property by the school district," under certain circumstances.[1] The parties to this appeal dispute whether a county board of education is a "governing board of a school district" for purposes of section 53094.

Appellants, the Santa Clara County Office of Education, the Santa Clara County Board of Education[2], Rocketship Education, and Rocketship Eight Charter School, maintain that county boards of education may issue zoning exemptions pursuant to section 53094. Consistent with that position, the Santa Clara County Board of Education

---

[1] All further statutory references are to the Government Code unless otherwise indicated. For convenience, we refer to section 53094, subdivision (b) as section 53094.

[2] Respondents erroneously identified the Santa Clara County Board of Education as the "Board of Trustees for the Santa Clara County Office of Education" in their Petitions for Writ of Mandate.

(County Board) approved a resolution exempting from local zoning ordinances property to be used by Rocketship Education for a charter school. Respondents, San Jose Unified School District (the District) and Brett Bymaster, contend that county boards of education have no authority to issue zoning exemptions under section 53094. Respondents successfully sought a writ of mandate to set aside the resolution.

We do not need to determine the precise meaning of section 53094 to resolve this appeal. We can and will limit our analysis to the narrower question of whether section 53094 authorizes county boards of education to issue zoning exemptions for charter schools. We conclude it does not. As a result, we will affirm the judgment.

## I.     BACKGROUND[3]

### A.     *The Public School System*

The Legislature has a constitutionally mandated duty to provide a system of public education. (Cal. Const., art. IX, § 5; *Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1195 (*Wells*).) Traditionally, the Legislature carried out that mandate by establishing local school districts. (*Today's Fresh Start, Inc. v. Los Angeles County Office of Education* (2013) 57 Cal.4th 197, 205 (*Today's Fresh Start*); *Butt v. State of California* (1992) 4 Cal.4th 668, 681 ["Local districts are the State's agents for local operation of the common school system"].) Since 1992, the Legislature also has

---

[3] The District's request for judicial notice filed on December 21, 2015 is denied. The District requests judicial notice of an *amicus curiae* brief that California Charter Schools Association filed in a criminal appeal, *People v. Selivanov* (2016) 5 Cal.App.5th 726. California Charter Schools Association, which also has filed an *amicus curiae* brief in this case, opposes the request. We deny the request to take judicial notice because the brief is not relevant to our resolution of the appeal. (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6 [declining to take judicial notice of materials not "necessary, helpful, or relevant"].)

Appellants' request for judicial notice filed on October 6, 2015 is granted. (Evid. Code, § 452, subds. (c) & (h)).

2

authorized the creation of charter schools, which are part of the public school system but offer an alternative to district-run schools. (*Today's Fresh Start*, *supra*, at pp. 205-206.)

The Constitution calls for the election or appointment of a superintendent of schools and a board of education for each county. (Cal. Const. Art. IX, §§ 3, 7.) Among other things, county superintendents and county boards of education are authorized to establish and maintain emergency elementary schools (Educ. Code, § 1920); community schools (*id*., § 1980); juvenile court schools (*id*., § 48645.2); child development programs (*id*., § 8320); and regional occupational centers providing education and training in career technical courses (*id*., § 52301).

The county superintendent is the head of the county office of education; the county board of education is its governing board. (*Today's Fresh Start*, *supra*, 57 Cal.4th at p. 207, fn. 4.) Each of the state's 58 counties has a county office of education. County offices of education support school districts by, among other things, providing or helping formulate new curricula and designing business and personnel systems.

### B.     *The Santa Clara County Office of Education and the Santa Clara County Board of Education*

The Santa Clara County Office of Education (County Office) provides support services to Santa Clara County's 31 school districts. The County Office also operates preschool and child development programs, provides environmental education to fifth and sixth graders, partners with districts in running their own special education programs, provides regional occupational program services, coordinates services for foster and homeless youth, monitors County-approved charter schools, and provides educational programs for children of migrant families. The County Office operates 144 school sites, which have a total enrollment of 6,789 students.

The County Board is the elected governing body of the County Office. According to the County Office's 2012 Annual Budget Report, the County Board's responsibilities include, but are not limited to, conducting regularly scheduled public meetings, reviewing

3

and adopting the annual budget of the County Office, appointing the County Superintendent of Schools, resolving school district attendance and expulsion appeals, adopting textbooks for instructional programs operated by the County Office, and ruling on charter school petitions received by the County Office.

### C.    Charter Schools

In 1992, the Legislature enacted the Charter Schools Act (Educ. Code, § 47600 et seq.) "to provide opportunities for teachers, parents, pupils, and community members to establish and maintain schools that operate independently from the existing school district structure . . . ." (*Id*., § 47601.)  In authorizing the creation of such charter schools, the Legislature intended "to improve learning; create learning opportunities, especially for those who are academically low-achieving; encourage innovative teaching methods; create new opportunities for teachers; provide parents and students expanded choices in the types of educational opportunities available; hold the charter schools accountable for meeting quantifiable outcomes; and provide 'vigorous competition within the public school system to stimulate continual improvements in all public schools.' " (*California School Bds. Assn. v. State Bd. of Education* (2010) 186 Cal.App.4th 1298, 1306, citing Educ. Code, § 47601.)

Charter schools "can be created in one of five ways:  By application to a school district ([Educ. Code,] § 47605), by application for a county charter to a county board of education (§§ 47605.5, 47605.6), by appeal of a denial by a school district to a county board of education (§ 47605, subd. (j)(1)), by appeal of a denial by a county board to the [State] Board [of Education] (*ibid*.), or by application for a state charter to the [State] Board [of Education] (§ 47605.8)." (*California School Boards Assn. v. State Bd. of Education* (2015) 240 Cal.App.4th 838, 852-853.)  Charter schools operate independently.  (*Today's Fresh Start*, *supra*, 57 Cal.4th at p. 206.)  However, the chartering body (i.e., the school district, county board of education, or State Board of

4

Education) is obligated to oversee each charter school under its authority.  (*Wilson v. State Bd. of Education* (1999) 75 Cal.App.4th 1125 (*Wilson*); Educ. Code, § 47604.32.)

Charter schools are part of the public school system.  (*Wilson*, *supra*, 75 Cal.App.4th at pp. 1139-1140; Educ. Code, § 47615, subd. (a)(2).)  As such, "they are eligible equally with other public schools for a share of state and local education funding." (*Today's Fresh Start*, *supra*, 57 Cal.4th at p. 206.)  Charter schools receive funding " 'based on the number of students they recruit and retain at the expense of the traditional system.' " (*Id*. at p. 207.)  Thus, charter schools and district-run public schools are in direct competition for students and dollars.

"In 2000, California voters enacted Proposition 39, which requires school districts to share their facilities with charter schools so that charter school students have access to facilities 'reasonably equivalent' to those available to other public school students." (*California Charter Schools Assn. v. Los Angeles Unified School Dist*. (2015) 60 Cal.4th 1221, 1226-1227; Educ. Code, § 47614, subd. (b).)

### D. *Rocketship Education, Rocketship Eight Charter School, and the Resolution*

Rocketship Education (Rocketship) is a network of elementary charter schools targeting low-income students and those who are below basic proficiency on state exams. The County Board has granted Rocketship a countywide charter to operate up to 25 charter schools.

Rocketship proposed to locate one of its charter schools on property (the Property) owned by the City of San Jose (the City).  The Property is located in the District and in the County Office's jurisdiction.  Use of the Property for a school is not permitted by the City's General Plan (which designates the Property as open space, parklands, and habitat) or its zoning ordinance (which zones the Property light industrial).  Therefore, Rocketship requested that the County Board and the County Office exempt the Property from the City's General Plan and zoning ordinance.  On January 23, 2013, the County

5

Board approved a resolution (the Resolution) exempting the Property from the City's General Plan and zoning ordinance pursuant to section 53094.

### E.      Respondents Seek to Set Aside the County Board's Resolution

The District filed a petition for a traditional writ of mandate under Code of Civil Procedure section 1085 and a complaint for declaratory relief on February 22, 2013.  It sought rescission of the Resolution and a declaration that only school districts, not county boards of education, have the authority to invoke section 53094.  Several days later, Bymaster filed a separate petition for writ of mandate requesting similar relief.[4]  The matters were consolidated.

### F.      Trial Court Ruling

In a March 7, 2014 statement of decision, the trial court ruled that the County Board lacked the authority to invoke section 53094.  The court concluded that school districts and county boards of education are "tasked with generally different responsibilities" and reasoned that, given those differences, the Legislature would have specifically stated an intent "to grant the power to override local zoning to county boards of education."  The court entered judgment against appellants on April 7, 2014.  That same day, the court issued a Peremptory Writ of Mandate directing the County Board to rescind the Resolution or take official action denying Rocketship's request for an exemption from local zoning requirements.

Appellants timely appealed.  The California Charter Schools Association has submitted an amicus curiae brief in support of appellants.  The League of California Cities has filed an amicus curiae brief in support of respondents.

---

[4] Bymaster owns property adjacent to the Property.  On appeal, he joins in the District's respondent's brief pursuant to rule 8.200, subdivision (a)(5) of the California Rules of Court.

## II.    DISCUSSION

### A.    *Standard of Review*

" ' "In reviewing a trial court's judgment on a petition for writ of ordinary mandate, we apply the substantial evidence test to the trial court's factual findings[, if any.]" [Citation.] . . . We independently review findings on legal issues and the interpretation of a statute is a legal issue subject to de novo review.' " (*Fry v. City of Los Angeles* (2016) 245 Cal.App.4th 539, 549 (*Fry*).)

"An agency interpretation of the meaning and legal effect of a statute is entitled to consideration and respect by the courts . . . ." (*Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7 (*Yamaha*).)  Thus, we "independently judge the text of the statute, taking into account and respecting the [County Board's] interpretation of its meaning . . . ." (*Ibid.*)  Below, we consider the degree of deference, if any, to which the County Board's interpretation is entitled.  (*Infra*, Part II.C.5.)

The parties disagree as to whether the trial court made any findings of fact. Appellants contend it did not.  Respondents maintain that deference is owed both to the trial court's factual findings and its conclusions of law, and they identify four determinations to which we must defer.  In fact, most of those determinations are legal conclusions to which we owe no deference.  (*Fry*, *supra*, 245 Cal.App.4th at p. 549.)  In reviewing the statement of decision, we have identified only one factual finding:  "[t]he County Board of Education does not have the unique educational task of mass public education that a school district has."  We need not decide whether that finding is supported by substantial evidence because our construction of section 53094 does not depend on whether county boards of education provide mass public education.

### B.    *Principles of Statutory Construction*

" 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.' [Citation.] 'We begin with the plain language of the statute, affording the words of the provision their

7

ordinary and usual meaning and viewing them in their statutory context, because the language employed in the Legislature's enactment generally is the most reliable indicator of legislative intent.' [Citations.] The plain meaning controls if there is no ambiguity in the statutory language. [Citation.]" (*People v. Cornett* (2012) 53 Cal.4th 1261, 1265.) "A statutory provision is ambiguous if it is susceptible of two reasonable interpretations." (*People v. Dieck* (2009) 46 Cal.4th 934, 940.) "[I]f the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction. In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy. [Citations.]" (*Wells*, *supra*, 39 Cal.4th at p. 1190.) But "[w]hen statutory language is clear and unambiguous, there is no need for construction and courts should not indulge in it. [Citations.]" (*People v. Overstreet* (1986) 42 Cal.3d 891, 895.)

### C. Analysis

#### 1. Plain Meaning

Section 53094 provides, in relevant part: "the governing board of a school district . . . by a vote of two-thirds of its members, may render a city or county zoning ordinance inapplicable to a proposed use of property by the school district. The governing board of the school district may not take this action when the proposed use of the property by the school district is for nonclassroom facilities, including, but not limited to, warehouses, administrative buildings, and automotive storage and repair buildings." At issue here is the meaning of the phrase "the governing board of a school district." Appellants contend that this phrase refers to any public agency that operates public schools, including county boards of education. Respondents maintain that it refers more

8

narrowly to the governing boards of local school districts, as they are described in the Education Code.[5]

The Government Code does not define the phrase "governing board of a school district," or the term "school district," for purposes of section 53094. In the absence of a statutory definition, we may look to dictionaries to ascertain the ordinary, usual meaning of a word or phrase. (*Heritage Residential Care*, *Inc*. *v*. *Division of Labor Standards Enforcement* (2011) 192 Cal.App.4th 75, 83.)

We begin with the term "governing board." The Oxford English Dictionary defines "to govern" as "[t]o direct and control the actions and affairs of." (Oxford English Dict. (2016) < http://www.oed.com> [as of 1/24/17].) The Merriam-Webster Online Dictionary defines "govern" as "to officially control and lead (a group of people): to make decisions about laws, taxes, social programs, etc., for (a country, state, etc.)." (Merriam-Webster's Online Dict. (2016) <http://www.merriam-webster.com/dictionary> [as of 1/24/17].) The Oxford English Dictionary defines "board" as "the recognized word for a body of persons officially constituted for the transaction or superintendence of some particular business . . . ." (Oxford English Dict., *supra*, < http://www.oed.com> [as of 1/24/17].) Black's Law Dictionary defines "board" as "[a] group of persons having managerial, supervisory, or advisory powers." (Black's Law Dict. (10th ed. 2014).) The foregoing dictionary definitions reveal that the ordinary meaning of "governing board" is "body that controls or manages."

Turning to the term "school district," the Merriam-Webster Online Dictionary defines that term as "a unit for administration of a public-school system often comprising several towns within a state." (Merriam-Webster's Online Dict., *supra*,

---

[5] " '[I]n line with the basic rule on the use of extrinsic aids, other statutes may not be resorted to if the statute is clear and unambiguous.' " (*People v. Honig* (1996) 48 Cal.App.4th 289, 327.) Therefore, we must determine whether section 53094 is ambiguous before turning to the Education Code.

<http://www.merriam-webster.com/dictionary> [as of 1/24/17].)  The Oxford English Dictionary defines "school district" as "a geographical area, typically comprising several towns, in which public schools are jointly administered."  (Oxford English Dict., *supra*, <http://www.oed.com> [as of 1/24/17].)  Black's Law Dictionary defines "school district" as "[a]n area within a particular state demarcated for the governance of all the public schools within that area . . . ."  (Black's Law Dict. (10th ed. 2014).)  These dictionary definitions indicate that the ordinary meaning of "school district" is "a region in which the public schools are under common management."

Thus, dictionaries suggest that the phrase "governing board of a school district" means the "body that controls or manages public schools in a particular region." However, the term "school district" might also reasonably be construed more narrowly to refer only to those entities commonly referred to as "school districts."  Thus, the meaning of the phrase "governing board of a school district" in section 53094 is ambiguous and we may consider extrinsic aids.

### 2.    *Legislative History*

" 'Both the legislative history of the statute and the wider historical circumstances of its enactment may be considered in ascertaining the legislative intent.' "  (*McCarther v. Pacific Telesis Group* (2010) 48 Cal.4th 104, 110.)  The events motivating the enactment of section 53094 are instructive.

### a.    *Hall and Town of Atherton*

The Legislature enacted section 53094 and a number of related provisions in response to *Hall v. City of Taft* (1956) 47 Cal.2d 177 (*Hall*) and *Town of Atherton v. Superior Court* (1958) 159 Cal.App.2d 417 (*Town of Atherton*).  (*City of Santa Clara v. Santa Clara Unified Sch. Dist.* (1971) 22 Cal.App.3d 152, 157 (*City of Santa Clara*); (*City of Santa Cruz v. Santa Cruz City School Bd. of Education* (1989) 210 Cal.App.3d 1, 5 (*City of Santa Cruz*).)  In *Hall*, our high court held that the construction of school buildings by school districts was not subject to local building regulations.  The court

10

rested its decision on two independent grounds. First, the court concluded, based on a number of constitutional provisions, that "[t]he public schools of this state are a matter of statewide rather than local or municipal concern" (*Hall*, *supra*, 47 Cal.2d at p. 179); "the power of the state Legislature over the public schools is plenary, subject only to any constitutional restrictions" (*id*. at pp. 180-181); and "[s]chool districts are agencies of the state for the local operation of the state school system." (*Id*. at p. 181.) From those conclusions, the court reasoned that when the state, through its school districts, "engages in such sovereign activities as the construction and maintenance of its buildings, . . . it is not subject to local regulations unless the Constitution says it is or the Legislature has consented to such regulation." (*Id*. at p. 183.) Second, the court reasoned that the state had occupied the field of school building regulation, such that conflicting local regulations were invalid. (*Id*. at p. 184.) For that conclusion, the *Hall* court noted that "numerous comprehensive building regulations contained in the Education Code and the rules and regulations of the Division of Architecture" govern the construction of school buildings. (*Id*. at p. 188.)

*Town of Atherton* applied *Hall* to hold that school districts were not required to comply with municipal zoning ordinances in designating school locations. The court's reasoning was two-fold: (1) the location and acquisition of a school site is a sovereign activity of the state (*Town of Atherton*, *supra*, 159 Cal.App.2d at p. 428) and (2) the state has occupied the field of school site location (*id*. at p. 422).

### b. The Legislative Response

Between 1957 and 1959, the Assembly Interim Committee on Municipal and County Government studied "the problems resulting from the State Supreme Court decision in the case of *Hall v. City of Taft*." (Problems of Local Government Resulting from the *Hall v. City of Taft* Case Decision, 6 Assem. Interim Com. Rep. No. 8, Municipal and County Government (1959) p. 5, 1 Assem. J. Appendix (1959); *City of Santa Clara*, *supra*, 22 Cal.App.3d at p. 158, fn. 3.) Witnesses the Assembly Interim

11

Committee interviewed expressed concern that *Hall* had immunized a large number of state agencies from local regulation, leaving numerous activities entirely unregulated. By contrast, most witnesses agreed with *Hall*'s decision to immunize school districts from complying with local regulations, given that the state had established comprehensive regulations governing school construction. Witnesses reasoned that "uniformity was desirable in school construction in order to attain the highest level of safety." Witnesses "believed school construction should be in a category of its own since it is so closely regulated by the State," and they recommended that the Legislature "[p]rovide that only school districts remain under the immunity provisions of the [*Hall*] decision."

In response to *Hall* and *Town of Atherton*, the Legislature "in effect, consented to local regulation [of state agencies] by adopting article 5, 'Regulation of Local Agencies by Counties and Cities,' in chapter 1, title 5 of the Government Code, sections 53090 through 53095." (*City of Santa Cruz*, *supra*, 210 Cal.App.3d at pp. 5-6.) Section 53091 requires local state agencies to comply with city or county zoning ordinances. Section 53094 allows school districts to exempt themselves from such regulations.

Based on the Assembly Interim Committee's report, the court in *City of Santa Clara* concluded that "[s]ections 53090 through 53095 were primarily designed to insure that . . . local agencies [other than school districts] . . . could not claim exemption from city and county zoning requirements by virtue of the language contained in *Hall* . . . ." (*City of Santa Clara*, *supra*, 22 Cal.App.3d at p. 158, fn. 3.) That court further concluded that, in section 53094, "the Legislature deliberately accorded different treatment to school districts than to other local agencies because it was well aware that school construction was subject to almost complete control by the state." (*City of Santa Clara*, *supra*, at p. 158, fn. 3.)

This court has noted that section 53094 does not grant school districts "*absolute*[] immun[ity] from local control . . . [. R]ather than grant absolute immunity from or give unqualified consent to local control, the Legislature in section 53094 struck a balance,

12

though not equal, between state educational and local regulatory interests and control." (*City of Santa Cruz*, *supra*, 210 Cal.App.3d at p. 6.) "The Legislature has since fine-tuned this balance" (*ibid*.), amending section 53094 three times since 1977. (Stats. 1984, ch. 657, § 1; Stats. 1990, ch. 275 (A.B. 2781), § 1; Stats. 2001, ch. 396 (A.B. 1367), § 2.)

### c. Allowing the County Board to Invoke Section 53094 Here Would Be Inconsistent With the Legislature's Intent

*Hall* and *Town of Atherton* sought to prevent local interference with the state's sovereign activities of school construction and school location by immunizing school districts, the entities the state had empowered to carry out those sovereign activities on its behalf, from local regulation. (*Hall*, *supra*, 47 Cal.2d at p. 181 ["[s]chool districts are agencies of the state for the local operation of the state school system"]; *Town of Atherton*, *supra*, 159 Cal.App.2d at p. 428 ["the state has expressly granted the power of location to its agencies, the school districts"].) In enacting section 53094, the Legislature preserved the immunity from local regulation that *Hall* and *Town of Atherton* accorded to school districts. Thus, like the *Hall* and *Town of Atherton* courts, the Legislature intended to forestall local obstruction of state-sanctioned school construction and school location.

Here, the County Board sought to employ section 53094 in connection with a proposed location for a charter school. While county boards of education are authorized to issue charters and oversee charter schools, it is local school districts that are obligated to provide facilities to charter schools. (Educ. Code, § 47614, subd. (b).) The state has not tasked county boards of education with acquiring sites for charter schools; to the extent county boards of education do so, they are not carrying out a sovereign activity on

13

behalf of the state.[6]  It follows, then, that empowering county boards of education to issue zoning exemptions for charter school facilities does not advance the purpose of section 53094—namely, preventing local interference with the state's sovereign activities.  For the foregoing reasons, the legislative history convinces us that section 53094 does not authorize county boards of education to issue zoning exemptions for charter school facilities.  None of appellants' remaining arguments persuades us otherwise, as discussed below.

### 3. *The Permissive Code*

Appellants urge us to consider Education Code sections 35160 and 35160.2 in construing section 53094.  Education Code section 35160, known as the "permissive code section," was enacted in 1976.  (*Hartzell v. Connell* (1984) 35 Cal.3d 899, 915-916 (*Hartzell*).)  It provides:  "the governing board of any school district may initiate and carry on any program, activity, or may otherwise act in any manner which is not in conflict with or inconsistent with, or preempted by, any law and which is not in conflict with the purposes for which school districts are established."  (Educ. Code, § 35160.)  "Prior to the effective date of section 35160, local school districts possessed little, if any, power to act without express legislative or administrative authorization.  [Citation.]  Section 35160 provides local districts with more flexibility."  (*Hartzell*, *supra*, at p. 915.)  In 1986 the Legislature enacted Education Code section 35160.2.  (Stats. 1986, ch. 1124, § 3.)  It provides that, "[f]or the purposes of Section 35160, 'school district' shall include county superintendents of schools and county boards of education.  [¶]  This section shall be interpreted to be declaratory of existing law."  (Educ. Code, § 35160.2.)

---

[6] Appellants note that county boards of education are obligated to deny a petition for a countywide charter school if the petition does not provide a comprehensive description of the proposed location of the charter school facility.  (Educ. Code, § 47605.6, subd. (b)(5)(D).)  But that obligation does not require county boards of education to identify or secure such locations.

According to appellants, "the permissive code offers critical insight into how the Legislature construes the term 'school district' in light of the evolving authority of county boards of education and county superintendents of schools to operate public schools." Their view appears to be that the Legislature has come to view county boards of education and school districts as possessing the same powers, such that we should construe "the governing board of a school district" in section 53094 as referring to county boards of education. If accepted, that reasoning would require courts to construe the phrase "the governing board of a school district" as including county boards of education throughout the Education Code. Such an interpretation would effectively read out of the Education Code a number of provisions—specifically, those indicating that a county board of education *is* the governing board of a school district in limited circumstances. (Educ. Code, §§ 35160.2 [school district includes county boards of education for purposes of the permissive code]; 44944, subd. (c)(3) ["If the county board of education is also the governing board of the school district …"]; 42127, subd. (i) ["Any school district for which the county board of education serves as the governing board of the school district…"]; 42131, subd. (f) ["Any school district for which the county board of education serves as the governing board of the school district"]; 41020, subd. (m)(3) ["The Superintendent shall report annually to the Controller on his or her actions to ensure that . . . each county board of education that serves as the governing board of a school district . . .]; 1984 [county board of education "deemed to be a school district" when "maintaining a county community school"]; 1906 ("[t]he county board of education shall have the same powers and duties with respect to such schools [for prisoners] . . . as the governing board of a school district would have were such schools maintained by a school district"].) We decline to adopt a statutory interpretation that would render those enactments mere surplusage.[7] (*City of Huntington Beach v. Board of Administration*

_____

[7] Appellants suggest that those provisions *should* be read out of the statute. For
(continued)

15

(1992) 4 Cal.4th 462, 468 ["legislation must be construed as a whole while avoiding an interpretation which renders any of its language surplusage"].)

#### 4. *Our Construction Does Not Produce Absurd Results*

Another "fundamental rule[] of statutory construction is that a law should not be applied in a manner producing absurd results, because the Legislature is presumed not to intend such results." (*Fireside Bank Cases* (2010) 187 Cal.App.4th 1120, 1129.) However, " '[i]f [a] construction does not result in patently absurd results, we may not construe a statute contrary to its plain language and ostensible intent merely because we disagree with the wisdom thereof.' " (*Fireman's Fund Ins. Co. v. Superior Court* (2011) 196 Cal.App.4th 1263, 1280.)

Appellants say our interpretation of section 53094 would lead to an absurd result: an uneven playing field on which local school districts have a competitive advantage—the zoning exemption power—over charter schools authorized by county boards of education. But appellants ignore the fact that Education Code section 47614, subdivision (b) makes local school districts, rather than the county board of education, responsible for providing facilities to county-authorized charter schools. Those facilities must be "sufficient for the charter school to accommodate all of the charter school's in-

that view, they rely on a 1986 Education Code study carried out at the behest of the Legislative Analyst in connection with Senate Bill 998 (1987). That study concluded that the Education Code contains a number of provisions granting school districts specific authority that are unnecessary given the Code's permissive nature. According to appellants, "there is no indication that" provisions of the Education Code granting county boards of education the authority of school districts in limited circumstances (e.g., Educ. Code, §§ 1984, 1906) "were actually needed or that they were intended to revoke or modify the existing powers of county boards." In other words, appellants opine that those Education Code provisions were unnecessary because county boards of education already had the powers accorded school districts. The legislative study on which appellants rely does not mention any of the relevant Education Code sections specifically (i.e., Educ. Code, §§ 44944, subd. (c)(3); 42127, subd. (i); 1984; 1906). Needless to say, it is a very thin reed on which to read those provisions out of the statute and we decline to do so.

16

district students in conditions reasonably equivalent to those in which the students would be accommodated if they were attending other public schools of the district." (Educ. Code, § 47614, subd. (b).) Thus, there is no risk that charter schools will be deprived of adequate facilities as a result of this decision.

One might question the wisdom of the legislative scheme, given the competitive relationship between local school districts and charter schools.[8] But the scheme, approved by the electorate in 2000, does not prevent charter schools from competing with school district schools, as the Legislature intended in enacting the Charter Schools Act. (Prop. 39, § 6, operative Nov. 8, 2000, approved Nov. 7, 2000).) Accordingly, we see no absurdity and decline to rewrite section 53094 under the absurd consequences doctrine.

### 5. Our Construction Does Not Violate the Constitution

" 'It is the rule that where a statute or ordinance is susceptible of two constructions, one of which will render it constitutional and the other unconstitutional, in whole or in part, the court will adopt the construction which, without doing violence to the reasonable meaning of the language used, will render it valid in its entirety, or free from doubt as to its constitutionality, even though the other construction is equally reasonable.' " (*In re Huddleson* (1964) 229 Cal.App.2d 618, 624.) The foregoing principle of statutory construction requires us, if possible, to construe section 53094 such that it is constitutionally valid. (*Eller Outdoor Advertising Co. v. Board of Supervisors* (1979) 89 Cal.App.3d 76, 81-82.)

Article IX, section 6 of the Constitution states, in relevant part: "The Public School System shall include all kindergarten schools, elementary schools, secondary

---

[8] Amicus curiae California Charter Schools Association raises some of the criticisms that can be leveled at the current legislative scheme, which pits school districts and charter schools against one another but requires charter schools to rely on school districts for charters and facilities. California Charter Schools Association maintains that charter schools need greater independence from school districts in order to achieve the goals of the Charter School Act. That argument is better directed to the Legislature.

schools, technical schools, and State colleges, established in accordance with law and, in addition, the school districts and the other agencies authorized to maintain them. No school or college or any other part of the Public School System shall be, directly or indirectly, transferred from the Public School System or placed under the jurisdiction of any authority other than one included within the Public School System."

According to appellants, any construction of section 53094 under which county boards of education cannot issue zoning exemptions violates article IX, section 6 of the Constitution by giving cities the right to exclude (and thereby control) county-run public schools. In the context of county-chartered charter schools, there is no risk of such exclusion given the obligation of the school district to provide facilities. (Educ. Code, § 47614, subd. (b).) Thus, control over county-chartered charter schools remains squarely in the Public School System under our construction of section 53094.

### 6. *Administrative Construction*

We may properly consider administrative construction of section 53094 as an aid to judicial interpretation. (*Nativi v. Deutsche Bank National Trust Co.* (2014) 223 Cal.App.4th 261, 280.) "An agency interpretation of the meaning and legal effect of a statute is entitled to consideration and respect by the courts . . . ." (*Yamaha*, *supra*, 19 Cal.4th at p. 7.) "Depending on the context, [such an interpretation] may be helpful, enlightening, even convincing[, or it may] . . . be of little worth." (*Id*. at pp. 7-8.) "Whether judicial deference to an agency's interpretation is appropriate and, if so, its extent—the 'weight' it should be given—is . . . fundamentally *situational*." (*Id*. at p. 12.)

*Yamaha* set forth two categories of factors that are relevant to a court's assessment of the weight to be afforded to an agency's informal statutory interpretation. (*Fonseca v. City of Gilroy* (2007) 148 Cal.App.4th 1174, 1193.) "First, there are factors indicating a comparative interpretive advantage the agency has over the court due to, for example, the agency's authorship of the regulation at issue or the technical nature of the legal text under consideration." (*Ibid*.) Here, there are no factors present suggesting county boards

18

of education have an advantage over courts in interpreting section 53094, as that provision is not "technical, obscure, complex, open-ended, or entwined with issues of fact, policy, and discretion." (*Yamaha*, *supra*, 19 Cal.4th at p. 12.)

The second category of factors to be considered are "those suggesting the agency's interpretation is likely to be correct." (*Yamaha*, *supra*, 19 Cal.4th at p. 13.) They include "indications of careful consideration by senior agency officials . . . , evidence that the agency 'has consistently maintained the interpretation in question, especially if [it] is long-standing' . . . , and indications that the agency's interpretation was contemporaneous with legislative enactment of the statute being interpreted." (*Ibid*.) Appellants contend that they presented evidence of a consistent and longstanding use of the section 53094 zoning exemption by county boards of education. We disagree with their assessment of the evidence.

Appellants presented evidence that six county boards of education invoked the section 53094 zoning exemption on 10 occasions between 1976 and 2013. Three of those occasions involved community schools. A county board of education is deemed to be a school district in that context. (Educ. Code, § 1984 [county board of education "deemed to be a school district" when "maintaining a county community school"].) Therefore, those three uses of the zoning exemption power were appropriate under our construction of section 53094 and offer appellants no support.[9] The remaining seven exemptions were issued by four different county boards; one of those exemptions was issued in the charter

---

[9] A 1996 Attorney General Opinion cited by amicus curiae the California Charter Schools Association does not support appellants for the same reason. Amicus curiae contends the Attorney General recognized the right of county boards of education to issue zoning exemptions under section 53094, but the opinion was limited to situations in which the county board of education is "*establishing and maintaining community schools* . . . ." (79 Ops.Cal.Atty.Gen. 155, (1996), italics added, citing Educ. Code, § 1984.)

school context. That evidence does not demonstrate an established administrative practice of construing section 53094 as authorizing county boards of education to issue exemptions for charter schools. Rather, it indicates that just four of 58 county boards of education have construed section 53094 as applying to county boards of education. And just one has done so in connection with a charter school.

In sum, the relevant situational factors in this case counsel in favor of granting the County Board's interpretation of section 53094 very little deference. Given that limited deference, its construction does not persuade us to abandon our own.

7. *Application of Section 53094 to Community Colleges*

Appellants claim that in *People ex rel. Cooper v. Rancho Santiago College* (1990) 226 Cal.App.3d 1281, the court recognized the authority of community college districts to override local zoning controls pursuant to Government Code section 53094, even though such districts are not specifically identified in section 53094. Not so. In that case, the court concluded that a community college could not, pursuant to section 53094, exempt a commercial swap meet operated on its property from local zoning laws because the swap meet constituted a nonclassroom facility. The court did not address whether the community college constituted a school district for purposes of section 53094. The case cannot be considered authority for a proposition it did not consider. (*Ginns v. Savage* (1964) 61 Cal.2d 520, 524, fn. 2; *City and County of San Francisco v. Sainez* (2000) 77 Cal.App.4th 1302, 1318.)

Appellants also contend that use of the section 53094 exemption by community college districts supports their reading of the statute. Below, they presented evidence that eight community college districts invoked the section 53094 zoning exemption on 10 occasions between 1996 and 2009. That evidence does not shed any light on the narrow question before us: whether a county board of education may use the section 53094 exemption in connection with charter school facilities. Accordingly, it does not alter our analysis.

20

## III.  DISPOSITION

The judgment is affirmed.  Appellants shall bear the costs of appeal.

                                             _____

                                             ELIA, J.

WE CONCUR:

_____

RUSHING, P. J.

_____

PREMO, J.

*San Jose Unified School District et al. v. Santa Clara County Office of Education et al.*
H041088

| Trial Court: | Santa Clara County Superior Court |
| | Superior Court No.: 1-13-CV-241695 |
| | |
| Trial Judge: | Honorable Franklin E. Bondonno |
| | |
| Counsel for Plaintiffs, and Respondents: | John Yeh |
| SAN JOSE UNIFIED SCHOOL | Amy Eileen Hoyt |
| DISTRICT et al. | Burke, Williams & Sorensen |
| | |
| | Christopher E. Schumb |
| | Law Offices of Christopher Schumb |
| | |
| Counsel for Defendant and Appellant: | Andrew Scully Oelz |
| SANTA CLARA COUNTY OFFICE OF | Akin Gump, Strauss Hauer & Feld |
| EDUCATION et al. | |
| | |
| Counsel for Real Parties in Interest and | Andrew Scully Oelz |
| Appellants: | Akin Gump, Strauss Hauer & Feld |
| ROCKETSHIP EDUCATION, | |
| ROCKETSHIP EIGHT CHARTER | Paul Christian Minney |
| SCHOOL | Young, Minney, & Corr |
| | |
| Amicus Curiae on behalf of | Winston Peter Stromberg |
| Appellants: | Daniel Jennings Aleshire |
| CALIFORNIA CHARTER SCHOOLS | Latham & Watkins |
| | |
| | Ricardo Jesus Soto |
| | California Charter Schools Association |
| | |
| LEAGUE OF CALIFORNIA CITIES | Raymond A. Cardozo |
| | Reed Smith |