Filed 8/6/24  In re V.R. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re V.R. et al., Persons Coming Under the Juvenile Court Law. | |
| KERN COUNTY DEPARTMENT OF HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ROSA R.,<br><br>Defendant and Appellant. | F087584<br><br>(Super. Ct. Nos. JD143966-00, JD143967-00, JD144019-00)<br><br>**OPINION** |

### THE COURT*

APPEAL from an order of the Superior Court of Kern County.  Susan M. Gill, Judge.

Gregory M. Chappel, under appointment by the Court of Appeal, for Defendant and Appellant.

Margo A. Raison, County Counsel, and Kelli R. Falk, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

*Before Detjen, Acting P. J., Franson, J. and De Santos, J.

In this juvenile dependency case, the mother of minors V.R., E.R., and D.R., Rosa R. (mother), appeals from the juvenile court's order terminating parental rights (Welf. & Inst. Code,[1] § 366.26). Mother's sole claim on appeal is that the court erred by finding the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.; ICWA) did not apply to the proceedings because the Kern County Department of Human Services (department) failed to make an adequate inquiry into whether the children were potentially Indian children within the meaning of ICWA.

Finding no error, we affirm the juvenile court's findings and orders.

## FACTUAL AND PROCEDURAL BACKGROUND[2]

On October 4, 2022, the department received a referral alleging general neglect of then two-year-old V.R. and then one-year-old E.R. The children had been living with the parents in a "drug house" and were detained by Mexican child protective services or "Desarrollo Integral de la Familia" (DIF) in April 2022. In May 2022, the children were released to the maternal aunt of the children, who took the children to Kern County where she resides. The children were then taken into DIF custody a second time,[3] which led to the referral to the department. The DIF released the children to the department because their last place of residence was Kern County. The children were taken into protective custody and placed together in a resource family home.

In investigating the referral, the department was initially unable to contact mother but obtained information from the maternal aunt. The maternal aunt reported that mother was born in California but currently lived in Tijuana. Mother had traveled to Bakersfield

[1]All further undesignated statutory references are to the Welfare and Institutions Code.

[2]As the only issue on appeal relates to the juvenile court's ICWA findings, we focus primarily on facts relevant to that issue.

[3]The maternal aunt reported to the department that the DIF removed the children from her due to her failure to protect the children from mother, but the department obtained a signed statement that indicated the maternal aunt gave the children back to the DIF by choice because the parents threatened her.

to give birth to her children; she was currently pregnant and planned to stay with the maternal aunt to give birth. The maternal aunt informed the social worker the maternal grandmother was deceased. Both maternal grandparents were born in Mexico, and the maternal aunt was not aware of any Native American ancestry in the family. The maternal aunt further reported the paternal family is also from Mexico. The paternal grandmother has a traveling visa and is able to come to the United States; there are other paternal relatives who live in California. The maternal aunt gave the social worker contact information for the maternal great-aunt, who she advised was the maternal grandfather's sister.

The department contacted the maternal great-aunt, and she was asked about and denied having Native American ancestry.

The department contacted the alleged father Rafael A. (father), who reported he lived in Mexico and was unable to travel to the United States. He further reported he had some family in Orange County, California, and his mother had a visa that allowed her to travel to the United States. He denied having Native American ancestry.

On October 12, 2022, the department filed juvenile dependency petitions on behalf of the children alleging they came within the juvenile court's jurisdiction under section 300, subdivision (b). It was specifically alleged the children had suffered or were at risk of suffering serious physical harm or illness as a result of mother's failure to care for them due to her substance abuse and mental illness and father's failure to care for them due to his substance abuse.[4]

On October 17, 2022, the juvenile court ordered the children detained from the parents, who were not present at the hearing. It further found there was "no reason to believe the children were Indian children" based on the information provided and added,

---

[4]The petitions also alleged the children came within the court's jurisdiction under section 300, subdivision (g) but that allegation was ultimately dismissed with prejudice.

3.

"that doesn't relieve the Department of the obligation to have a continuing duty to inquiry in compliance with [ICWA]."

In November 2022, mother gave birth to Baby Girl R. (D.R.) in Kern County. The department received a referral based on mother's mental health issues and history of substance abuse. The child was taken into protective custody and placed in the same home as V.R. and E.R.[5] Mother was asked about and denied having Native American ancestry.

On November 15, 2022, the department filed a juvenile dependency petition on behalf of D.R., alleging she came within the court's jurisdiction under section 300, subdivision (b). It was specifically alleged that D.R. had suffered or was at risk of suffering serious physical harm as a result of mother's failure to care for her due to her substance abuse and mental illness.

At the detention hearing for D.R. conducted on November 17, 2022, mother made her first appearance, but father was not present. Mother testified she did not have Native American ancestry. She said she was born in the United States, but her parents, her great-grandparents, and her great-great-grandparents were all from Mexico. The court stated in response, "Okay. So that's a pretty good indication there's probably no Native American or Alaskan Eskimo heritage in your family." The court also asked mother if father or his family ever lived in the United States, to which mother responded, "No, they're all from Mexico." Mother then indicated she had no reason to think father had any Native American or Alaskan Eskimo heritage in his family. The court advised mother that if she were to receive any information that provided a reason to know D.R. was an Indian child she was to let the court and the attorneys know. Based on mother's testimony on parentage, the court kept father's status as an alleged father as to D.R. The

---

[5]In May 2023, V.R. and E.R. were moved from this home and placed together in a different resource family home.

court then stated that at that point in time there was no reason to know or believe D.R. was or may be an Indian child but that the department had a continuing duty to inquire in compliance with ICWA. The court ordered D.R. detained from mother.

Mother completed a "PARENTAL NOTIFICATION OF INDIAN STATUS" (ICWA-020) form stating that none of the factors indicating the children may be Indian children applied.

At the jurisdiction hearing for all three children conducted on December 12, 2022, mother was present, but father was not. The juvenile court found the children were described by section 300, subdivision (b). The court heard testimony from mother regarding paternity and elevated father to presumed status for V.R. and E.R. As to ICWA, mother again testified no one had told her of any Native American ancestry in her or father's family. The court found there was no reason to believe the children were Indian children and that ICWA did not apply but that the department had a continuing duty to inquire in compliance with ICWA. The court again ordered mother to tell the department if she got more information. The matter was set for disposition.

The department's disposition report dated February 7, 2023, included "family finding efforts" that included the department's attempts to comply with the inquiry provisions of ICWA. It was reported that in October 2022, the department contacted the maternal aunt who reported having no Native American ancestry and declined to give any more family information as she stated she had already provided such information. In November 2022, a voicemail was left for a maternal nonrelated extended family member. Mother was contacted and reported having no Native American ancestry and could not provide contact information for father. The maternal aunt was contacted again and again reported having no Native American ancestry. The report stated the family-finding social worker was able to identify 42 maternal relatives including children and deceased relatives and zero paternal relatives. It appears in December 2022, "AB 938" letters were sent to 18 maternal relatives.

5.

The disposition report further stated that mother informed the social worker in February 2023 that father did not have a working telephone at the time nor postal service at his home. She did not know his physical address, and asked the maternal aunt, but the maternal aunt did not know either. The department tried to contact father through previously successful methods but was unable to leave voicemails and received no responses to text messages.

The disposition hearing was conducted on February 9, 2023; mother was present but father was not. The juvenile court adjudged the children dependents and removed them from the custody of the parents. Both parents were ordered to be provided six months of family reunification services.

In July 2023, mother reported to the department that father had passed away in Mexico on June 26, 2023, and provided a copy of the death certificate, which she reported was sent to her by the paternal grandmother.

The six-month review hearing was conducted on August 9, 2023. The juvenile court terminated mother's reunification services and set a section 366.26 hearing.

The section 366.26 report dated November 27, 2023, recommended the court terminate parental rights and order adoption with the children's current care providers as the permanent plan. The report noted no Native American ancestry was reported by maternal relatives and no paternal family members were located "as they reside in Mexico."

On February 1, 2024, the department filed a declaration of a department paralegal documenting department ICWA efforts. The declaration indicated the paralegal reviewed department reports as well as the "Registrar System" for prior ICWA cases for the family and found none. The declaration further stated, "I was able to locate minimal documentation and family contacts regarding inquiry on Native American ancestry for this family" and went on to summarize ICWA inquiry efforts set forth in previous reports.

The section 366.26 hearing was conducted on February 5, 2024.  The court noted there had been no assertion of Native American ancestry by any of the relatives questioned.  The court ordered parental rights terminated and adoption as the children's permanent plan.

**DISCUSSION**

Under California's statutory scheme to comply with ICWA, the court and county child welfare department "have an affirmative and continuing duty to inquire whether a child," who is the subject of a juvenile dependency petition, "is or may be an Indian child."[6]  (§ 224.2, subd. (a); see *In re Isaiah W.* (2016) 1 Cal.5th 1, 9; Cal. Rules of Court, rule 5.481(a).)  The agency's initial duty of inquiry includes "asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child and where the child, the parents, or Indian custodian is domiciled."  (§ 224.2, subd. (b).)  "Under both ICWA and California law, ' "extended family member[s]" ' include the child's 'grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent.' " (*In re D.S.* (2020) 46 Cal.App.5th 1041, 1053; see 25 U.S.C. § 1903(2); Welf. & Inst. Code, § 224.1, subd. (c).)

Before finding ICWA inapplicable, the juvenile court must make a finding that the agency conducted "proper and adequate further inquiry" and exercised "due diligence" in doing so, and that "there is no reason to know whether the child is an Indian child." (§ 224.2, subd. (i)(2).)

---

[6]An "Indian child" is defined in ICWA as an unmarried individual under 18 years of age who is either (1) a member of a federally recognized Indian tribe, or (2) is eligible for membership in a federally recognized tribe and is the biological child of a member of a federally recognized tribe.  (25 U.S.C. § 1903(4) & (8); see Welf. & Inst. Code, § 224.1, subd. (a) [adopting federal definitions].)

7.

We review the juvenile court's finding that there is no reason to know whether a child is an Indian child for substantial evidence, and the court's finding that the agency has conducted a proper and adequate inquiry and due diligence for abuse of discretion. (*In re K.H.* (2022) 84 Cal.App.5th 566, 600–601; *In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1004–1005.)[7]

Regarding the juvenile court's discretion in evaluating the department's inquiry efforts, this court explained in *K.H.*, "so long as the agency conducts a reasonable inquiry and documents its results, the juvenile court will have the room to exercise its discretion in determining whether the agency's efforts are sufficient to satisfy the mandates of ICWA and related California law." (*In re K.H.*, *supra*, 84 Cal.App.5th at p. 604.) "[R]easonableness, viewed through the lens of ICWA's purpose, is the touchstone. The agency's inquiry must extend far enough to reasonably ensure that if there is information the child is or may be an Indian child, that information is gathered." (*Ibid*.) ICWA determinations are best left "for the juvenile court in the first instance because it is better positioned to evaluate the evidence provided by the Department. So long as the court ensures the inquiry is reasonable and of sufficient reach to accomplish the legislative purpose underlying ICWA and related California law, the court will have an adequate factual foundation upon which to make its ICWA finding. [Citation.]" (*K.H.*, *supra*, at p. 621.)

In assessing prejudice stemming from an inquiry error, "the focus is on the missed opportunity to uncover relevant information necessary to make a reliable, informed

---

[7]There is a split of authority among the Courts of Appeal regarding how to evaluate claims of ICWA inquiry error. (See *In re K.H.*, *supra*, 84 Cal.App.5th at pp. 611–618 [summarizing the varied approaches].) Our Supreme Court has granted review on the issue in *In re Dezi C.* (2022) 79 Cal.App.5th 769, review granted September 21, 2022, S275578. We will apply the standards this court articulated in *K.H.* until the Supreme Court provides additional guidance in *Dezi C.*

determination concerning whether the child is or may be an Indian child." (*In re K.H.*, *supra*, 84 Cal.App.5th at p. 609.)

Mother argues the juvenile court's implicit finding that the department made an adequate inquiry was error, and the court therefore did not have a sufficient record to determine whether the children were Indian children within the meaning of ICWA.[8] Mother's primary contentions with the department's conduct are (1) it should have more thoroughly documented the names and relationships of maternal relatives who were located as well as efforts to contact them so the juvenile court could have been certain whether the inquiry reached available relatives on both sides of the maternal family, and (2) it did not do enough to locate and inquire of paternal relatives, leaving the juvenile court with only mother's and father's assertions he had no Native American ancestry.[9]

As to the maternal side of the family, we conclude the court did not abuse its discretion in impliedly finding the department's inquiry was adequate and it exercised due diligence. Three generational levels—the mother, the maternal aunt, and the maternal great-aunt—were questioned regarding possible Native American ancestry, and all denied having Native American ancestry. The maternal great-aunt's relationship was described, contrary to mother's assertion, as the maternal grandfather's sister, and it was reported the maternal grandmother was deceased. Family finding efforts were documented, and the department attempted to contact more maternal relatives with the purpose of ICWA inquiry in mind. While the documentation might not have been as

---

[8]As the department does not contest mother's assertion that ICWA inquiry duties apply whether children are taken into custody by warrant or not, we assume for the purpose of mother's argument they do. (See *In re Jerry R.* (2023) 95 Cal.App.5th 388, 426.) The issue is pending before the California Supreme Court in *In re Ja.O.* (2023) 91 Cal.App.5th 672, review granted July 26, 2023, S280572.

[9]We note one of mother's asserted deficiencies is that the maternal great-aunt's relationship was not "adequately explained," however, the record does contain a statement by the maternal aunt that the maternal great-aunt identified in the record is the maternal grandfather's sister.

9.

specific as mother would have liked, based on the documentation before it, the court could have reasonably concluded the department made reasonable attempts to obtain information regarding the children's potential status as Indian children from available relatives on both sides of the maternal family.

As to the paternal side of the family,[10] it is a closer call. As mother points out, even though it was reported father had relatives in California, and mother appeared to have had contact with the paternal grandmother, the department reported they could not locate any paternal relatives.[11] However, based on the information that is available on the record, we find no error. The department did document, admittedly not thoroughly, that it attempted to locate paternal relatives and found none. Though we are not sure of the exact methods used, we know similar methods resulted in identifying several maternal relatives. Thus, the juvenile court could have inferred the department used diligence to locate paternal relatives, but the methods used simply did not procure results. We acknowledge that ideally, the department would have documented efforts to at least contact the paternal grandmother by asking father, when he was alive, or mother, as it appears she had direct contact with her, for her contact information. Despite this deficiency, the fact remains that both father and mother denied Native American ancestry on the paternal side of the family, and mother explained that all of father's family was from Mexico. While we agree with mother that a family being from another country does not necessarily excuse the department of ICWA inquiry duties, we recognize the obstacles it presents to the department in trying to locate and communicate with available family members, and the juvenile court may consider these obstacles in determining what

---

[10]Mother acknowledges that because father was never elevated to presumed status as to D.R., the ICWA inquiry into the paternal side of the family is only relevant as to V.R. and E.R.

[11]Mother points out that she told the department she received father's death certificate from the paternal grandmother. This court also notes that during a supervised visit on March 7, 2023, mother was observed to receive a phone call from whom it appears to have been the paternal grandmother.

is reasonable in attempted compliance with ICWA. We also recognize that a parent's denial of Native American ancestry similarly does not excuse the department from its ICWA inquiry duties. (See *In re K.H.*, *supra*, 84 Cal.App.5th at p. 605 [inquiry that extends to parents only falls "well short" of complying with plain language of inquiry statutes, and absent information that other relatives are unavailable is inadequate].) As we have stated, however, the focus is on "reasonableness," and based on the information available to it, the juvenile court, who presumably had the benefit of this court's decision in *K.H.*, was within its discretion to determine the department's search for paternal relatives was reasonable.[12]

Concluding the juvenile court's determination that the department's inquiry was adequate and it exercised due diligence was not an abuse of discretion, we also conclude its determination that there was no reason to know the children were not Indian children was supported by substantial evidence, as the parents and all family members questioned denied Native American ancestry. As such, we find no error with regard to the juvenile court's ICWA findings.

## DISPOSITION

The juvenile court's findings and orders are affirmed.

---

[12]Even if we were to find error as to inquiry on the paternal side, we would find it was harmless. Given the information on father's Mexican heritage, we find it unlikely wider inquiry would uncover relevant information. (See *In re Kenneth D.* (2022) 82 Cal.App.5th 1027, 1034, review granted Nov. 30, 2022, S276649 [Bureau of Indian Affairs advised that "native heritage from Mexico would not trigger the ICWA"].)