Filed 1/22/25  P. v. Banks CA2/8

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>JEREMIAH BANKS,<br><br>  Defendant and Appellant. | B332966<br><br>Los Angeles County<br>Super. Ct. No. YA081449 |

  APPEAL from an order of the Superior Court of Los Angeles County, Eric C. Taylor, Judge.  Affirmed.

  Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

  Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, and Nicholas Webster and Amanda V. Lopez, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

  After a jury convicted Jeremiah Banks of two counts of robbery and evading an officer, the trial court sentenced him to

18 years and four months, including enhancements for a serious prior felony and prior prison term. About twelve years into Banks's sentence, the Secretary of the California Department of Corrections and Rehabilitation (the Secretary) recommended that the trial court recall Banks's sentence and resentence him under what is now Penal Code section 1172.1. The trial court held a hearing and determined Banks's sentence remained appropriate. We affirm. Undesignated citations are to the Penal Code.

I

Daisy Sahagun left work at McDonald's to get change from a bank. When she returned to the McDonald's parking lot, a light gray or blue Ford Escape pulled up behind, blocking her. A man approached holding a gun and said, "Don't make things harder." Sahagun gave him her purse, and the man got back in his car and drove away. Sahagun later identified a pair of Banks's sunglasses as the glasses the robber wore.

About a week later, building manager Ricardo Monreal left his building and went to the bank to deposit the rent money he had collected. When Monreal returned to the building, a Black man approached him wearing sunglasses and a hat. The man demanded Monreal give him his briefcase. Monreal said he had no money. The man tried to pull the briefcase away. When the man said he had a gun, Monreal let go of the briefcase. The man got into a light blue or gray Ford SUV and left. A passerby who witnessed the incident picked Banks out from a six-pack of photos.

Monreal called 911, and the police dispatch sent an alert about a gray SUV without plates around the location of the robbery. Officer Matthew Concannon saw an SUV and driver matching the description. Concannon followed the SUV. When

2

backup arrived, Concannon initiated a stop.  Banks slowed to almost a complete stop.  Concannon stopped his car, but before he could get out, Banks took off.  Banks led the police on a high speed chase on roads around the Los Angeles International Airport at speeds over 90 miles per hour.  He ran red lights, jumped a curb, and drove the wrong way in traffic.  One of the police officers shot at Banks's car.  Police eventually managed to disable Banks's car by hitting it with a police car.  Police arrested Banks.  In the back of the SUV, police found sunglasses, a hat, and Monreal's briefcase.  There was also a black replica firearm and a multicolored toy gun, as well as cough drops and a receipt from a drugstore that shared a parking lot with the bank Monreal had gone to earlier that day.  The receipt was from about two hours before Monreal's 911 call.

A jury convicted Banks of two counts of robbery and evading an officer with willful disregard for safety of persons or property.  In a bifurcated proceeding, the trial court found true that Banks had a prior conviction and had served a prior prison term.  The court sentenced Banks to the upper term of five years for the first robbery count, doubled due to the strike, and one third the midterm for the second robbery count and evading count, as well as a consecutive five years for the serious prior felony enhancement.  In total, Banks's sentence was 18 years and four months.  Banks appealed, and this court affirmed the judgment.  (*People v. Banks* (Mar. 7, 2014, B245223, [nonpub. opn.].)

In August 2021, the Secretary sent a recommendation to the superior court that it recall Banks's sentence and resentence him pursuant to what has been renumbered (without substantive change) section 1172.1.  The letter included a cumulative case

summary and evaluation report.  The prosecutor filed an opposition arguing against the recommendation.  The trial court appointed counsel for Banks.

The court held a hearing to consider resentencing Banks in July 2023.  At that time, counsel for Banks told the court she had not been able to file a response to the opposition due to illness.  She requested a continuance.  Banks objected and asked for a *People v. Marsden* (1970) 2 Cal.3d 118 hearing.  After clearing the court room, the trial court ascertained that Banks in fact wanted a *Faretta v. California* (1975) 422 U.S. 806 hearing as he intended to represent himself.  Back in open court, the court said it had told Banks this "was not a good idea," and that the prosecutor had a lot of experience and Banks had none.  The trial court told Banks it was "almost always an unwise decision" to represent oneself and that he would not be helped or granted leniency from the court.  The trial court urged Banks to speak with his family before making the decision, but Banks refused.  He signed the *Faretta* waiver and confirmed he had no questions.  The court found Banks had been advised and understood the "potential ramifications" of defending himself and had decided to do so.

The trial court relieved counsel and allowed Banks to proceed in pro per that day as requested.  Banks submitted a three-page handwritten motion in support of his request for modification of his sentence to the court and prosecutor.  The hearing proceeded.

The court went over the positive commendations in Banks's file, as well as the eight disciplinary write-ups, noting Banks's record was "not exemplary."  When the court said Banks had not engaged in any self-help programming, Banks corrected him.

4

Banks informed the court he had completed Criminal Gangs Anonymous, Narcotics Anonymous, and Alcohol Anonymous, and participated in groups toward getting his G.E.D. Banks did not ask the court for a continuance to allow him to submit additional records. Banks also noted that he had a metal rod in his leg and used a cane.

The trial court summarized its thinking on the matter. It noted Banks had made his robbery victims fear for their lives and had put others at risk with "an extensive chase going over 90-plus miles an hour," running stop signs and red lights and requiring a dangerous police maneuver. Against this, Banks had not shown sufficient reason to change the sentence. The court therefore declined to impose a different sentence. Banks appeals.

## II

Banks incorrectly argues the trial court's decision must be reversed because it abused its discretion by failing to apply the correct presumption and by relying on incomplete and improper information.

## A

The trial court properly applied the presumption in favor of recalling and resentencing found in section 1172.1.

In general, a trial court loses resentencing jurisdiction once a person begins to serve the sentence. (*People v. McCallum* (2020) 55 Cal.App.5th 202, 210, 217 (*McCallum*).) Section 1172.1 creates an exception, returning jurisdiction to the court at the recommendation of the Secretary. (*Ibid.*; § 1172.1, subd. (a).) Where the Secretary makes such a recommendation, "[t]here shall be a presumption favoring recall and resentencing of the defendant, which may only be overcome if a court finds the defendant currently poses an unreasonable risk of danger to

5

public safety [that is, of committing a 'super strike' crime]." (§§ 1172.1, subd. (b)(2), 1170.18, subd. (c), 667, subd. (e)(2)(C).) This presumption arises from the fact that the referring agency had already scrutinized this individual's case and determined the recommendation is appropriate. (*People v. Braggs* (2022) 85 Cal.App.5th 809, 819 (*Braggs*).)

Banks argues the trial court failed to apply this presumption here because the trial court did not reduce his sentence as recommended by the Secretary. He misapprehends the scope of the presumption.

Banks argues that, because the court did not find he posed an unreasonable risk of committing a new super strike crime, the statute required the court to apply the presumption in favor of recall and resentencing. This argument fails because the court did so.

On the record, the prosecutor conceded and the court agreed that Banks "satisfied the presumption for having the hearing on resentencing." The court then gave an individualized consideration of the case and what sentence was appropriate, taking into account the appropriate post-conviction factors. That the court, after its review, did not reduce Banks's sentence does not undermine this conclusion.

Our colleagues in the Sixth District recently considered the application of the presumption in *Braggs*. The *Braggs* court looked to the legislative history for section 1172.1, which clarifies that "[i]t is the intent of the Legislature for judges to recognize the scrutiny that has already been brought to these referrals by the referring entity, and *to ensure that each referral be granted the court's consideration by* setting an initial status conference, recalling the sentence, and *providing the opportunity for*

*resentencing* for every felony conviction referred by one of these entities." (*Braggs*, *supra*, 85 Cal.App.5th at p. 819 [quoting Stats. 2021, ch. 719, § 1, subd. (h), italics added].)  A committee analysis further noted that "[e]ven if a court grants the petition for recall and resentence, the court still has discretion in imposing a new sentence" and "would not necessarily impose a lower sentence." (*Braggs*, *supra*, 85 Cal.App.5th at p. 820 [quoting Assem. Com. on Public Safety, Analysis of Assem. Bill No. 1540 (2021–2022 Reg. Sess.) as amended Apr. 22, 2021, p. 6, italics added.)].)  The *Braggs* court soundly concluded that "the presumption is intended to apply to the initial determination of whether to grant a request to recall and resentence, but that the sentence ultimately imposed by the court is left to its discretion without any further application of the presumption." (*Braggs*, *supra*, 85 Cal.App.5th at p. 820.)

The trial court provided Banks the opportunity the legislature intended after application of the presumption.

B

The trial court did not abuse its discretion in deciding not to modify Banks's sentence.

We will disturb the trial court's decision about resentencing only when the court has exercised its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice.  (*McCallum, supra,* 55 Cal.App.5th at p. 211.)  This standard involves abundant deference to the trial court's determination.  (*Ibid*.)

Banks argues the trial court abused its discretion because it failed to obtain an updated report on post-conviction factors and therefore could not have exercised the "informed discretion" to which he was entitled.  (*People v. Fredrickson* (2023) 90

7

Cal.App.5th 984, 988.)  In general, trial courts should rely on the most up-to-date information available in considering the factors enumerated in the statute and rules of the Judicial Council, including post-conviction factors.  (*People v. Bullock* (1994) 26 Cal.App.4th 985, 989–990; § 1172.1, subd. (a) (*Bullock*).)  This court lacked a current report but it had up-to-date information.  (*Bullock, supra,* 26 Cal.App.4th at p. 990.)  Banks told the court during the hearing what was missing from the report:  his completion of Criminal Gangs Anonymous, Narcotics Anonymous, and Alcoholics Anonymous and participation in a group for getting his G.E.D.  The trial court noted it did not have documentation of that, "[b]ut, in any event – I don't see a ground to do this.  [¶]  I mean, if you're asking the court to exercise its discretion, the discretion has to be reasonable and justified."  The trial court took the new information into account.

Moreover, the reason the court did not have this information is that Banks insisted on representing himself and going forward with the proceeding that day.  Banks was aware the trial court did not have updated information and insisted on proceeding.  When the court reiterated it did not have that information, Banks did not ask the court to get it.  He cannot now complain of its absence.  (*People v. Holmes* (2022) 12 Cal.5th 719, 821–822.)

Banks argues the court relied too heavily on the facts of the underlying crime and not enough on the post-conviction factors.  The record does not support this claim.  The court stated it had read the recommendation and enclosures, the prosecutor's brief, and Banks's brief.  The court went through the commendations and disciplinary write-ups in Banks's file.  As noted, the court stated it did not have documentation of the self-help groups, but

8

also said that would not change its opinion.  The court heard about Banks's use of a cane and metal rod in his leg, but noted Banks did not have a significant physical ailment.  The court also described the circumstances of the crimes that were egregious, including that Banks robbed the victims under threat of death and put others at grave risk during his escape.  Contrary to Banks's assertion, it is not the crimes themselves the court looked at but Banks's conduct in committing them:  making his robbery victims fear for their lives and putting other lives in danger as he fled.  And while the Legislature may not have ruled certain crimes unsuitable for relief, the California Rules of Courts allow the court to consider sentencing goals such as promoting public safety, punishing defendants, and providing a deterrent. (See Cal. Rules of Court, rule 4.410(a)(1), (a)(2), (a)(4); 4.421(b)(1) [courts may consider whether "defendant has engaged in violent conduct that indicates a serious danger to society"].)

After taking these factors into account, the trial court declined to strike the enhancements.  The court weighed the appropriate facts.  Banks has not identified an abuse of discretion.

**DISPOSITION**

We affirm the order.


WILEY, J.


We concur:



GRIMES, Acting P. J.        VIRAMONTES, J.


9